Cecil B. STEPHENSON, Jr., Appellant,

v.

Diann LeBOEUF, Appellee.

No. 14–98–00723–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 6, 2000.

Rehearing Overruled May 25, 2000.

H. Miles Cohn, Houston, for Appellant.

Daryl L. Moore, Houston, for Appellee.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## OPINION ON REHEARING

MAURICE E. AMIDEI, Justice.

Appellee's motion for rehearing is overruled, our previous opinion issued January 20, 2000 is withdrawn, an the following opinion is issued in its place.

Appellant, Cecil B. Stephenson, Jr. appeals the trial court's judgment entered in favor of appellee, DiAnn LeBoeuf. We affirm in part as modified and reverse and render in part.

## I. Background

Stephenson represented LeBoeuf in divorce proceedings in 1983. At the beginning of the representation, LeBoeuf paid Stephenson a $1,000.00 retainer and later payments of $900.00 and $350.00. After that, LeBoeuf was no longer able to make any payments to Stephenson. In March 1983, Stephenson had LeBoeuf sign a promissory note in the amount of $900.00 for his unpaid attorney's fees and a deed of trust on her home to secure the note. The note also covered any additional fees that might become due and owing. By September 1983, Stephenson had negotiated a property settlement for LeBoeuf. Under the property settlement, LeBoeuf's husband, Joe LeBoeuf, was to receive the house and LeBoeuf was to receive a $38,-800.00 note due in six months, secured by a deed of trust on the home, on which Stephenson named himself trustee. Joe was to refinance the house and pay LeBoeuf's note. Also, in September 1983, Stephenson had LeBouef sign another note in the amount of $8,100.00 for unpaid attorney's fees, secured by the same deed of trust as she had signed with the $900.00 note.

The divorce became final in October 1983. In December 1983, Joe unexpectedly passed away before he had refinanced the house and paid LeBoeuf. Pursuant to the divorce decree, Joe was to pay Stephenson $1,200.00 in attorney's fees. Before his death, Joe had paid Stephenson $600.00. Stephenson attempted to collect the $8,100.00, which LeBoeuf owed him, by filing a claim against Joe's estate for the entire $8,100.00. Stephenson's claim against Joe's estate was denied. Stephenson also filed a claim against the estate of Amanda and Kyle LeBoeuf, the LeBoeuf's children. This claim was also denied.

Stephenson asked LeBoeuf to sign a partial transfer of lien, assigning a portion of the $38,800.00 note to him to secure payment of his fees. LeBoeuf refused to sign the transfer, and Stephenson, subsequently sued LeBoeuf for his unpaid attorney's fees. In 1989, Stephenson received a judgment in his favor for $7,500.00, plus interest. Stephenson filed an abstract of judgment in the Harris County Real Property Records' Office.

In March 1986, LeBoeuf moved to Las Vegas, Nevada. In December 1989, she filed for bankruptcy in Las Vegas. In March 1990, LeBoeuf received a discharge in bankruptcy.

In August 1992, the property was sold to tenants who had been renting it. On May 28, 1992, at the request of Texas American Title Company, Stephenson advised it he was due $24,396.97 for the 1989 judgment he had received against LeBoeuf. In order to allow the sale of the property to go through, the parties agreed to place the proceeds from the sale of the property in an escrow account.

LeBouef hired a new attorney, who wrote Stephenson in September and October 1993, notifying him of LeBoeuf's discharge in bankruptcy and asking him to release his claim to the proceeds of the sale. In 1994, when Stephenson refused to release his claim to the escrow funds, LeBoeuf filed suit for declaratory judgment on the funds in the escrow account.

LeBoeuf's claims against Stephenson for breach of fiduciary duty and fraud were tried to a jury. The jury found Stephenson (1) had assumed the fiduciary duty of an attorney to LeBouef by naming himself trustee of the deed of trust securing the $38,800.00 note while serving as her attorney, and (2) had "knowingly" breached that fiduciary duty when he made a claim to the proceeds from the sale of the property. The jury, however, found Stephenson had not committed fraud against LeBoeuf. Based on its affirmative finding of breach of fiduciary duty, the jury awarded Leboeuf $51,511.05 from the escrow account, $7,750.00 for past mental anguish, and $25,000.00 in exemplary damages. The jury awarded LeBoeuf $100,000.00 in attorney's fees for trial, $10,000.00 for appeal to the court of appeals, and $10,000.00 for appeal to the Texas Supreme Court.

The jury determined Stephenson was entitled to $6,530.00 of the funds in the escrow account. The jury also awarded Stephenson $34,000.00 in attorney's fees for trial, $10,000.00 for appeal to a court of appeals, and $10,000.00 for appeal to the Texas Supreme Court.

In its judgment, the trial court, stating that the declaratory judgment action had been tried to the court, declared that LeBoeuf has all rights in the escrow account and Stephenson has no rights in those funds. Based on the declaratory judgment, the court entered judgment for LeBoeuf for attorney's fees in the same amount as that which the jury had awarded her. The court also granted LeBoeuf's motion notwithstanding the verdict on the jury's findings that Stephenson was entitled to a portion of the escrow funds and attorney's fees on the basis that there were no pleadings to support the jury's findings and the issue was not tried by consent. Finally, the trial court entered

judgment on the jury's award of $7,750.00 in mental anguish damages and $25,000 in punitive damages.

## II. Fiduciary Duty

 Stephenson challenges the legal sufficiency of the evidence in support of the jury's finding that he assumed a fiduciary duty.[1] When reviewing a challenge to the legal sufficiency of the evidence, i.e., a "no evidence" point of error, the reviewing court may consider only the evidence and inferences that support the challenged findings and should disregard all evidence and inferences to the contrary. *See ACS Inv., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law, and any challenges merely go to the weight of the evidence. *See Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). The court may sustain a "no evidence" point if the record reveals one of the following:

(1) a complete absence of a vital fact;

(2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact;

(3) the evidence offered to prove a vital fact is no more than a scintilla; and

(4) the evidence established conclusively the opposite of the vital fact.

*See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). When the reviewing court sustains a "no evidence" point, it is the court's duty to render judg-

1. LeBoeuf contends Stephenson has waived this issue for appeal. A review of the record reflects that Stephenson objected to the submission of the jury questions on fiduciary duty on the ground that there was no evidence of a fiduciary relationship based on Stephenson's role as attorney or trustee. In his motion for judgment non obstante veredicto, Stephenson further challenged the sufficiency of the evidence supporting the jury's findings that he had assumed and breached a fiduciary duty.

ment for the appellant because that is the judgment the trial court should have rendered. *See Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176 (Tex.1986); *National Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969).

LeBoeuf based her assertion that Stephenson owed her a fiduciary duty on two relationships: (1) as her attorney, and (2) as trustee on her deed of trust. A fiduciary duty requires the fiduciary to place the interest of the other party above his own. *See Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex.App.-Houston [14th Dist.] 1997, writ denied). There are two types of fiduciary relationships. The first is a formal fiduciary relationship, which arises as a matter of law, including attorney-client relationships. *See Insurance Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980). The second is an informal fiduciary relationship, which may arise "from a moral, social, domestic or purely personal relationship called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex.1998). A confidential relationship exists in cases in which " 'influence has been acquired and abused, in which confidence has been reposed and betrayed.' " *Id.* (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992)).

Stephenson argues his representation of Leboeuf in her divorce could not give rise to a fiduciary duty with respect to the escrow account because that representation terminated upon her divorce in 1983. We agree. The attorney-client relationship is based a contractual relationship in which the attorney agrees to render professional services for the client. *See Vinson & Elkins v. Moran,* 946 S.W.2d 381, 405 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.) (citing *Yaklin v. Glusing, Sharpe & Krueger,* 875 S.W.2d 380, 383 (Tex.App.-Corpus Christi, 1994, no writ); *Parker v. Carna-*

*han,* 772 S.W.2d 151, 156 (Tex.App.-Texarkana 1989, writ denied)). To establish the relationship, the parties must explicitly, or by their conduct, manifest an intention to create it. *See id.* (citing *Terrell v. State,* 891 S.W.2d 307, 313 (Tex.App.-El Paso 1994, pet. ref'd)). In the absence of an agreement to the contrary, an attorney-client relationship generally terminates upon the completion of the purpose of the employment. *See Simpson v. James,* 903 F.2d 372, 376 (5th Cir.1990); *Dillard v. Broyles,* 633 S.W.2d 636, 643 (Tex.App.-Corpus Christi 1982, writ ref'd n.r.e.).

LeBoeuf hired Stephenson to represent her in her divorce. Stephenson testified that he did not represent LeBoeuf any further after her divorce. In fact, when Joe LeBoeuf died in December 1983, Stephenson recommended to LeBoeuf that she hire another attorney to represent her. LeBoeuf did not testify or otherwise present any evidence that Stephenson agreed to represent her in any matters beyond her divorce. Indeed, it cannot be said there was any attorney-client relationship when Stephenson sued LeBoeuf for his unpaid attorney's fees.

Stephenson further contends no fiduciary duty arose from his position as trustee of LeBoeuf's deed of trust. In Texas, a deed of trust is used in the nature of a mortgage in the transfers of real property. *See Lucky Homes, Inc. v. Tarrant Sav. Ass'n,* 379 S.W.2d 386, 388 (Tex. Civ.App.-Fort Worth, 1964), *rev'd on other grounds,* 390 S.W.2d 473 (Tex.1965). The power of the trustee to sell the deed for the parties is derived solely from the trust instrument. *See Bonilla v. Roberson,* 918 S.W.2d 17, 21 (Tex.App.-Corpus Christi 1996, no writ.) (citing *Winters v. Slover,* 151 Tex. 485, 251 S.W.2d 726, 728 (1952)). The powers conferred upon a trustee in a deed of trust must be strictly followed. *See American Sav. & Loan Ass'n v. Musick,* 531 S.W.2d 581, 587 (Tex.1975); *Bonilla,* 918 S.W.2d at 21 (citing *Durkay v. Madco Oil Co.,* 862 S.W.2d 14, 17 (Tex. App.-Corpus Christi 1993, writ denied));

see also University Sav. Ass'n v. Spring-woods Shopping Ctr., 644 S.W.2d 705, 706 (Tex.1982). A trustee's duties are fulfilled by complying with the deed of trust. See Peterson v. Black, 980 S.W.2d 818, 822 (Tex.App.-San Antonio 1998, no. pet.).

 When exercising a power in a deed of trust, the trustee becomes a special agent for both parties, and he must act with absolute impartiality and with fairness to all concerned in conducting a foreclosure. See id.; Bonilla, 918 S.W.2d at 21 (citing First Fed. Sav. & Loan Ass'n v. Sharp, 359 S.W.2d 902, 904 (Tex.1962)); First State Bank v. Keilman, 851 S.W.2d 914, 925 (Tex.App.-Austin 1993, writ denied). The word "trustee" is equated with fairness, impartiality, and a maximum effort to achieve the object of the trust. See First Fed. Sav. & Loan Ass'n of Dallas, 359 S.W.2d at 904. The Fort Worth Court of Appeals explained:

> In connection with any actual execution of the power of sale the person who has given the deed of trust is a cestui que trust of him who acts as trustee thereunder, and the trustee in effecting the sale pursuant to the authority granted in the deed of trust owes to him at least the duty to carry out the authority devolved, in scrupulous honesty, according to law and the provisions of the instrument.

Lucky Homes, Inc., 379 S.W.2d at 388. The trustee, however, does not owe a fiduciary duty to the mortgagor. See Keilman, 851 S.W.2d at 925; see also Castillo v. First City Bancorporation of Texas, 43 F.3d 953, 960 (5th Cir.1994) (applying Texas law); FDIC v. Myers, 955 F.2d 348, 350 (5th Cir.1992) (applying Texas law).

LeBouef relies on a case from this court in support of her assertion that Stephenson owed her a fiduciary duty as trustee. See American Sav. & Loan Ass'n v. Musick, 517 S.W.2d 627 (Tex.Civ.App.-Houston [14th Dist.] 1974), rev'd on other grounds, 531 S.W.2d 581 (Tex.1975). In American Sav. & Loan Ass'n, the court stated the law with respect to trustees:

> "The powers conferred upon a trustee in a deed of trust must be strictly followed. The deed of trust creates a true fiduciary relationship between the grantor and trustee, and the trustee may not delegate his duties without strict compliance with express terms of the trust. A sale made without such compliance is void and passes no title."

Id. at 631. (citations omitted) (emphasis added).

LeBoeuf's reliance on American Sav. & Loan Ass'n, however, is misplaced. The above stated law concerns a claim that a substitute trustee could not have been appointed to sell the property because the trustee had not refused to act under the trust. See id. at 631–32. A reading of the entire passage, rather than just the italicized portion upon which LeBoeuf relies, reflects the well-settled principal in Texas law that the trustee has the duty to follow strictly the terms of the deed of trust. The Austin Court of Appeals addressed a similar argument. See Keilman, 851 S.W.2d at 925. The Keilman court noted that while the American Sav. & Loan Ass'n court used the phrase "fiduciary relationship," the opinion indicates the duty owed is simply a duty to act with impartiality and fairness by strictly complying with the terms of the deed of trust. See id. (citing American Sav. & Loan Ass'n, 517 S.W.2d at 631).

As trustee, the only "duty" Stephenson could have owed LeBoeuf was to adhere to the terms of the deed of trust. LeBoeuf has not asserted that Stephenson failed to act under the terms of the trust. Indeed, LeBoeuf never asked Stephenson to sell the property and Stephenson was not required to sell the property until asked.

LeBoeuf also relies on Edwards v. Holleman, in her assertion that Stephenson, as trustee, owed her a fiduciary duty. See 893 S.W.2d 115 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Edwards, however, is distinguishable from the case at bar. In Edwards, based on a finding that the trustee had charged an unreasonable

trustee's fee, the jury found that the trustee had breached his fiduciary duty by intending to gain an additional benefit for himself. *See id.* at 119. Here, there is no allegation that Stephenson charged or attempted to collect any trustee's fee.

■ On appeal, LeBoeuf appears to be asserting a fiduciary relationship arose from a confidential relationship, which, as previously stated, arises in cases in which influence has been acquired and abused and in which confidence has been reposed and betrayed. *See Associated Indem. Corp.,* 964 S.W.2d at 287; *Crim Truck & Tractor Co.,* 823 S.W.2d at 594. She claims Stephenson acquired and abused his position as trustee to protect his own interest in collecting his fees.

Stephenson asserts that LeBoeuf neither pled a confidential relationship nor raised this argument before the trial court. In response, LeBoeuf contends that the jury's finding of a confidential relationship is deemed found in support of the judgment. We disagree. There are two types of relationships: (1) a formal relationship such as attorney-client, and (2) an informal fiduciary relationship arising from a confidential relationship. *See Hoggett,* 971 S.W.2d at 487. LeBoeuf's assertion of a fiduciary relationship was submitted to the jury on one distinct theory, that "of an attorney to DIANN LEBOEUF by naming himself as the Trustee in the Deed of Trust ... while he was serving as her attorney," not a confidential relationship.

■ Finally, Stephenson claims that even if he had assumed a fiduciary duty, there is no evidence or insufficient evidence that he breached a fiduciary duty when he made a claim to a portion of the escrow funds. We agree. Under the Texas Disciplinary Rules of Professional Conduct an attorney may "acquire a lien granted by law to secure the lawyer's fee or expenses." Tex. R. Disciplinary Prof'l

Conduct 1.08(h)(1), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G. app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9).

In any event, when the title company contacted Stephenson, it was because he was a judgment creditor, not because he was a trustee, attorney, or fiduciary. He had a right to obtain the money judgment for his fees. The judgment lien is both automatic and authorized by law.

We find the evidence is not legally sufficient to support the jury's finding that Stephenson had assumed a fiduciary duty or that Stephenson had breached such duty. LeBoeuf's claims for mental anguish and punitive damages are based on her claim for breach of fiduciary duty. Therefore, because there is no evidence to support an assumption or a breach of a fiduciary duty, we reverse the judgment of the trial court awarding LeBoeuf mental anguish and punitive damages.

## III. Trial Amendment

Stephenson contends the trial court erred in denying his claim to a portion of the funds on the basis that he failed to plead for it. He also asserts the trial court erred in denying his motion for trial amendment. The jury determined Stephenson was entitled to assert a claim for $6,530.00 out of the escrow funds and attorney's fees for trial and appeal. The trial court granted LeBoeuf's motion for judgment notwithstanding the verdict on the grounds that there were no pleadings to support the jury's findings and the issue had not been tried by consent.[2]

In the prayer of his Second Amended Answer, which is the pleading on which Stephenson went to trial, Stephenson requested "recovery of the amount due, if any within the escrow funds and for any and all relief, at law or in equity to which he may show himself justly entitled." In

2. The court, agreeing with Leboeuf that Stephenson had not pled for any recovery of the escrow funds and that the issue had not been tried by consent, submitted the question to the jury "so that we can have complete answers to all of the questions that we might need answers to in the event of action taken by the Court of Appeals."

his First Amended Answer, Stephenson had asked "the Court to determine who is entitled to these funds." This request, however, was omitted from the Second Amended Answer.

In response to the trial court's determination that he had not pled a claim to the funds in the escrow account, Stephenson sought leave to file a trial amendment to cure the deficiency. The trial court denied leave. Rule 66 of the Rules of Civil Procedure provides:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

TEX. R. CIV. P. 66.

The trial court, therefore, has no discretion to refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense and, therefore, is prejudicial on its face and the opposing party objects to it. *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex.1992); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980); *Lege v. Jones*, 919 S.W.2d 870, 875 (Tex.App.-Houston [14th Dist.] 1996, no writ). An amendment is mandatory if it is merely procedural in nature such as conforming the pleadings to the evidence at trial. *See Chapin & Chapin, Inc.*, 844 S.W.2d at 665. An amendment is not mandatory if it is substantive, i.e., changing the nature of the trial. *See id.* If the amendment is not mandatory, the decision to allow or deny the amendment is within the sound discretion of the trial court. *See State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994). Therefore, the trial court's decision to allow or deny the amendment may be reversed only if it is a clear abuse of discretion. *See id.*

A proposed trial amendment, which asserts a new cause of action may be prejudicial on its face. *See Whole Foods Market Southwest, L.P. v. Tijerina*, 979 S.W.2d 768, 776 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Merely because an amended pleading asserts a new cause of action, however, does not make it prejudicial to the opposing party as a matter of law. *See id.* Rather, the amendment must be evaluated in the context of the entire case. *See id.*

An amendment prejudicial on its face has three defining characteristics ascertainable from the amendment viewed in the context of the record. First, the amendment must assert a new substantive matter that reshapes the nature of the trial itself. *See id.* Second, the new matter asserted must be of such a nature that the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested. *See id.* "[M]erely because the opposing party did not anticipate the issues in the amendment is not the test. The question is whether the opposing party *could* have anticipated the newly asserted matter as revealed by the record of the case." *See id.* (quoting *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex.App.-Dallas 1996, writ denied)) (emphasis in the original). Third, the opposing party's presentation of the case would be detrimentally affected by the filing of the amendment. *See id.*

Although the assertion of a previously unpled claim to the escrow funds is a substantive matter, it was not prejudicial on its face. Stephenson's assertion of a

claim to the escrow funds did not reshape the nature of the trial. This case involves limited facts and issues. We do not see that any additional facts would have been injected into the trial on this issue. For the same reasons, Stephenson's claim to the escrow funds would not have affected LeBoeuf's presentation of her case. Also, LeBouef could anticipate the assertion of a claim to the escrow funds because Stephenson had previously asserted a claim in his first amended answer and had requested such relief in the prayer of the his second amended answer. Therefore, the trial court abused its discretion in denying Stephenson's trial amendment.

■ The trial court granted LeBoeuf's motion notwithstanding the verdict and ordered that Stephenson take nothing on the jury's findings that he was entitled to a portion of the funds in the escrow account and attorney's fees on the ground that Stephenson's pleadings did not support those jury findings. A motion for judgment not withstanding the verdict may be granted only if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991). A motion for directed verdict is proper when a defect in the opponent's pleadings makes them insufficient to support a judgment. *See Knoll v. Neblett,* 966 S.W.2d 622, 627 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Finding that it was an abuse of discretion for the trial court to deny Stephenson's trial amendment, we conclude it was error for the court to grant LeBoeuf's motion notwithstanding the verdict that Stephenson take nothing on his claim for a portion to the escrow funds and attorney's fees on the basis that he did not plead for such claim.

We must now determine if Stephenson's claim for unpaid attorney's fees was discharged in LeBoeuf's bankruptcy action.

#### IV. Bankruptcy Discharge

■ Stephenson contends his claim was not discharged in LeBoeuf's bankruptcy proceedings. First, Stephenson argues he was not properly listed and did not receive notice of the bankruptcy case. Although LeBoeuf listed Stephenson as an unsecured creditor, the address she listed for him was not his then current address. Therefore, Stephenson did not learn of the bankruptcy case until 1993, after the bankruptcy case was closed and the parties had entered into the escrow agreement.

■ A creditor must have notice of the bankruptcy or have actual knowledge of the bankruptcy in time to permit timely filing of a proof of claim. *See Matter of Springer,* 127 B.R. 702, 707 (Bankr. M.D.Fla.1991). Section 523(a)(3)(A) of the Bankruptcy Code provides that a debt is not discharged in bankruptcy if the creditor is neither properly listed nor scheduled. *See* 11 U.S.C. § 523(a)(3)(A) (1993). It further requires the debtor to list the address where the creditor is destined to receive notice. *See In re Nicholson,* 170 B.R. 153, 155 (Bankr.W.D.Mo.1994); *In re Lyman,* 166 B.R. 333, 335 (Bankr.S.D.Ill. 1994); *Matter of Springer,* 127 B.R. at 707. The Bankruptcy Code places the burden on the debtor to complete the schedule accurately. *See Matter of Springer,* 127 B.R. at 707.

LeBoeuf contends a debt will not be discharged if the debtor's failure to list properly a creditor was due to intentional design, fraud, or improper motive. *See Matter of Stone,* 10 F.3d 285, 289 (5th Cir.1994). On the other hand, if the failure is attributable to negligence or inadvertence, then equity favors discharge of the debt. *See id.* LeBoeuf listed the same address as was on Stephenson's lien filed with the Harris County Clerk's Office. Therefore, according to LeBoeuf, there is no evidence that her failure to provide Stephenson's correct address was intentional.

■ LeBoeuf filed for bankruptcy in 1989, only months after Stephenson had obtained a judgment against her. LeBoeuf should have known of Stephenson's

841

then current address from that litigation. "Use of an address that is two years old does not constitute reasonable diligence for purposes of the statute excepting from discharge a debt not listed or scheduled." *In re Meek*, 126 B.R. 1021, 1023 (Bankr. E.D.Ark.1991). Here, LeBoeuf used an address that was several years old, demonstrating a lack of diligence. Admittedly, "[t]here may be situations which arise wherein the creditor's business address is not known and that there may even be a need for some kind of publication or substituted notice." *In re Nicholson*, 170 B.R. at 155. This is not such a case. LeBoeuf has not shown that she was misled or unaware of Stephenson's correct address. *See id.* It was LeBoeuf's burden to complete her bankruptcy schedule accurately. *See Matter of Springer*, 127 B.R. at 707. This she did not do.

■ Second, Stephenson argues LeBoeuf should be judicially estopped from asserting that his claims against her have been discharged. When LeBoeuf filed for bankruptcy, she did not list the $38,800.00 promissory note or rental payments on her schedule of assets; instead, her sworn schedules showed no assets. In the present case, LeBoeuf has claimed the same asset, i.e., her former home or the funds in escrow from its sale, which was omitted from her sworn statements filed in bankruptcy court. Because the asset was not disclosed in bankruptcy court, Stephenson contends he lost the opportunity to participate in LeBoeuf's bankruptcy proceedings.

■ Judicial estoppel applies to a party who tries to contradict a sworn statement made in prior litigation. *See Stewart v. Hardie*, 978 S.W.2d 203, 208 (Tex.App.-Fort Worth 1998, pet. denied) (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988)); *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex.App.-El Paso 1997, writ denied). The purpose of the doctrine is to protect the integrity of the judicial process by preventing the parties from "'playing fast and loose with the courts,

and prohibiting changing positions according to the exigencies of the moment.'" *Matter of Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir.), *cert. denied*, 68 U.S.L.W. 3311, ⎯ U.S. ⎯, 120 S.Ct. 936, 145 L.Ed.2d 814 (1999) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir.1993)); *see also Andrews*, 959 S.W.2d at 649. Generally, it applies when "'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Matter of Coastal Plains, Inc.*, 179 F.3d at 206 (quoting *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)).

■ Debtors in bankruptcy have "an absolute duty to report whatever interests they hold in property, even if they believe the asset is worthless or unavailable to the bankruptcy estate." *See Stewart*, 978 S.W.2d at 208 (citing *In re Yonikus*, 974 F.2d 901, 904 (7th Cir.1992)); *see also Matter of Coastal Plains, Inc.*, 179 F.3d at 207–08 (stating the Bankruptcy Code imposes on the debtor an express, affirmative duty to disclose all assets). The courts will not allow a debtor to obtain relief from the bankruptcy court by representing that a claim does not exist and then subsequently assert that claim for her own benefit in a separate proceeding. *See Matter of Coastal Plains, Inc.*, 179 F.3d at 208.

Although LeBoeuf filed a signed sworn schedule with the bankruptcy court stating she had no assets, she, nonetheless, contends she did not intentionally represent to the bankruptcy court that she had no interest in the property. She testified that she explained to her bankruptcy attorney her interest in the property. According to LeBoeuf, her attorney discussed the issue with the bankruptcy trustee, who determined that any interest she might have would be exempt on the basis that it was her homestead.

■ LeBouef's reliance on her attorney's advice does not bar the application of judicial estoppel in this case. "A debtor's

reliance on advice of counsel constitutes an excuse for his transfer or concealment of property from creditors and will prevent the court from denying his discharge only where his reliance is reasonable and in good faith." *In re Dreyer*, 127 B.R. 587, 597 (Bankr.N.D.Tex.1991). The court in *Dreyer* rejected the debtor's argument that he relied on his attorney to prepare schedules. The court observed that the debtor signed the statements and schedules prepared for him and he had declared under penalty of perjury that he had read the statements and schedules and that they were true and correct. *See id.* Similarly, LeBoeuf swore under penalty of perjury that she had read the schedules, that the schedules were true and correct, and that she had no assets.

LeBoeuf also claims she did not successfully maintain in bankruptcy court that she had no interest in the property because successfully maintaining a position in the bankruptcy court would involve submitting the issue to the court and obtaining a favorable determination of the issue. To the contrary, LeBoeuf's debt was discharged on the bankruptcy trustee's finding that she had no assets.[3]

LeBoeuf further contends the bankruptcy court had notice of her interest in the property. Included in the bankruptcy file is a letter from Linda Goerhs, the children's guardian, to Old Republic Surety Company, which is attached to a proof of claim filed by Lawyers Surety Corporation. The letter makes reference to LeBoeuf's lien. This does not change the fact that LeBoeuf swore under penalty of perjury that she had no assets or that the trustee reported to the bankruptcy court that LeBoeuf had no assets. We conclude LeBoeuf is judicially estopped to assert that Stephenson's claim against her was discharged in bankruptcy.

3. The trustee stated that he had "neither received any property nor paid any money on the account of this estate except exempt property; that the trustee has made diligent inquiry into the whereabouts of property belonging to the estate and that there is no property available for distribution from the estate over and above that exempted by the debtor(s)."

## V. Claim to Escrow Funds

On review of a declaratory judgment action, the court of appeals must uphold the judgment of the trial court if it can be sustained on any legal theory supported by the evidence. *See Bell v. Katy Indep. Sch. Dist.*, 994 S.W.2d 862, 864 (Tex. App–Houston [1st Dist.] 1999, no pet.); *Oak Hills Properties v. Saga Restaurants, Inc.*, 940 S.W.2d 243, 245 (Tex. App.-San Antonio 1997, no writ). The court of appeals has a duty to render the judgment the trial court should have rendered. *See City of Galveston v. Giles*, 902 S.W.2d 167, 172 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 488–89 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The court of appeals, however, may only render judgment in cases where the material facts are undisputed. *See Mitchell v. Rancho Viejo, Inc.*, 736 S.W.2d 757, 762 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.) (citing *Donald v. Carr*, 407 S.W.2d 288, 291 (Tex.Civ.App.-Dallas 1966, no writ)).

Finding that Stephenson's claim for unpaid attorney's fees was not discharged in LeBoeuf's bankruptcy proceedings, we conclude the trial court erred in declaring that Leboeuf has all rights to the funds in the escrow account, while Stephenson has none. The trial court submitted to the jury a question on Stephenson's entitlement to the escrow funds. The jury determined Stephenson was entitled to $6,530.00. Therefore, because there are no facts left to be determined, we render judgment that Stephenson recover $6,530.00 of the funds in the escrow account and that LeBoeuf recover the remaining amount.

## VI. Attorney's Fees

Stephenson claims the trial court erred in awarding attorney's fees to

LeBoeuf. Under the declaratory judgments act, the granting of attorney's fees is with the discretion of the trial court. *See* TEX. PRAC. & CIV. REM.CODE ANN. § 37.009 (Vernon 1997) *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). The act, however, imposes four limitations on that discretion. *See Bocquet*, 972 S.W.2d at 21. The attorney's fees must be (1) reasonable, (2) necessary, (3) equitable, and (4) just. *See id.* Whether the attorney's fees are reasonable and necessary are fact questions. *See id.* Whether the attorney's fees are equitable and just are matters of law, which come within the trial court's discretion. *See id.* The court may conclude it is not equitable or just to award reasonable and necessary attorney's fees. *See id.*

In her Nevada bankruptcy proceedings, LeBoeuf did not properly list Stephenson as a creditor, even though she had burden to do so. Stephenson did not receive notice of the bankruptcy proceedings or LeBoeuf's discharge in bankruptcy until nearly four years after the fact and, therefore, was not able to assert a claim for his unpaid attorney's fees. LeBoeuf further declared under penalty of perjury that she had no assets when, in fact, she had an interest in her former homestead, only to claim, in this case, an interest in that same property. Under these circumstances, we find that an award of attorney's fees to LeBoeuf is neither equitable nor just. Therefore, the trial court abused its discretion in awarding attorney's fees to LeBoeuf. We reverse the portion of the judgment awarding LeBoeuf attorney's fees and render judgment that LeBoeuf take nothing on her claim for attorney's fees under the declaratory judgments act.

The trial court submitted a question to the jury on Stephenson's claim for reasonable attorney's fees. The jury award Stephenson $34,400.00 in attorney's fees for trial, $10,000 for appeal to the court of appeals, and $10,000 for appeal to the Texas Supreme Court.

On rehearing, LeBoeuf claims that Stephenson is not entitled to attorney's fees because (1) he did not assert the right to attorney's fees in an issue or raise it in his argument and therefore waived it; and (2) he judicially admitted he was not entitled to attorney's fees by stating in his Brief, "there was no purpose or object of the declaratory action as between LeBouef and Stephenson." We disagree as to both contentions.

■ The rule which applies to statement of issues in appellate briefs is TRAP 38.1(e) which provides:

The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering *every subsidiary question that is fairly included.*

(Emphasis added).

■ Even before Rule 38.1(e) was made effective September 1, 1997, a point of error was sufficient if it directed attention of the appellate court to the error about which the complaint is made. *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex.1995). Also, courts liberally construe briefing rules. *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990).

The new rules simplified appellate procedure so cases are decided on their merits rather than be dismissed on procedural or technical grounds.

Under the appellate rules, parties are now permitted to use the federal courts' "issues presented" practice rather than the traditional Texas "point of error" practice. This represents a major change in one of the most picayune areas of appellate law under the old rules. Under the old rule, courts of appeals often elevated form over substance and held points of error to be waived on a myriad of hypertechnical deficiencies in the terminology of the points.... The new 'issues presented' practice signals the intention of the Texas Supreme Court to have all appeals judged on the merits of the controversies rather than

hypertechnical waiver issues. Appellate courts must now look to the argument to determine the nature of complaints, including any subsidiary issues, rather than the points or issues alone. If the court is able to ascertain the nature of the complaint from the argument, the issue will be preserved for appellate review. Only in the rare instance of an indecipherable argument should an issue be deemed waived by the court. . . .

5 TEX. JUR. 3D *Appellate Review* §§ 429 (citing John Hill Cayce, Jr., et al., *Civil Appeals in Texas: Practicing under the New Rules of Appellate Procedure,* 49 BAYLOR L. REV. 867 (1997)), 430 & 431 (1999).

The attention of the court is directed to the error about which Stephenson complains, that is, the trial court's granting of LeBoeuf's motion notwithstanding the verdict, which denied the jury award in favor of Stephenson in the amount of $6,530 as to the escrow funds and attorney's fees in connection with the trial and appeal of the case. We find that Stephenson's statement of issues and argument regarding his claimed interest in the escrow account include the subsidiary issue of his attorney's fees, his statement of facts clearly sets forth the facts necessary to a determination of this issue, and his prayer specifically requested "attorney's fees as found by the jury."

■ The trial court denied Stephenson's recovery of the escrow funds and attorney's fees not because of any substantive defect in Stephenson's claim but because of a perceived defect in his pleadings. As we have held, because Stephenson's trial amendment correcting such defect should have been allowed by the trial court and the motion for judgment n.o.v. should not have been granted, we are required to enter the judgment the trial court should have entered. Although the attorney's fees portion of Stephenson's claim is dependent on his recovery of a portion of the escrow funds, it necessarily follows that if he recovers the escrow

funds he sought, he should also recover the attorney's fees. If we had denied Stephenson any escrow funds, then the attorney's fees, which are dependent on such recovery, would have been denied regardless of whether LeBoeuf requested them. *See First Am. Title Ins. Co. v. Willard,* 949 S.W.2d 342, 352 (Tex.App.-Tyler 1997, writ denied).

■ Moreover, Stephenson did not judicially admit in his Brief that he was not entitled to attorney's fees. Stephenson was referring to the trial court's reasoning in denying his claim to the escrow funds, i.e., his "supposed" failure to plead his claim, and LeBoeuf's reason for failing to submit a jury issue regarding her claim to the escrow funds, i.e., Stephenson not disputing the merits of the underlying claim. Because Stephenson did not dispute LeBoeuf's claim to the escrow funds there was no need or purpose for declaratory relief to LeBoeuf which would justify an award to her of attorney fees and costs. *See Hartford Casualty Ins. Co. v. Budget Rent-A-Car Systems, Inc.,* 796 S.W.2d 763, 772 (Tex.App.-Dallas 1990, writ denied); *Barnett v. City of Colleyville,* 737 S.W.2d 603, 606–07 (Tex.App.-Fort Worth 1987, writ denied). Because we allowed Stephenson's trial amendment, the trial court's ruling that Stephenson's pleadings were defective has been corrected to allow Stephenson's claim for a portion of the escrow funds and attorney's fees.

Having determined that Stephenson is entitled to a portion of the escrow funds, we reverse the trial court's judgment that Stephenson take nothing on his claim for attorney's fees and render judgment, under the declaratory judgments act, that Stephenson recover attorney's fees in the amounts awarded by the jury.

### VII. Conclusion

In summary, we find no evidence to support the jury's finding that Stephenson had either assumed or breached a fiduciary duty and, accordingly, we reverse

the portion of the judgment of the trial court awarding LeBoeuf $7,750.00 in mental anguish damages and $25,000.00 in exemplary damages and render judgment that LeBoeuf take nothing on her claim that Stephenson breached a fiduciary duty. We conclude the trial court abused its discretion in denying Stephenson's trial amendment and erred in granting LeBoeuf's motion for judgment notwithstanding the verdict. We further find the trial court erred in declaring that all rights to the funds in the escrow account belong to LeBoeuf. Therefore, we reverse the portion of the judgment that Stephenson take nothing on his claim for the funds in the escrow account and render judgment that Stephenson recover $6,530.00 of the funds in the escrow account and modify the judgment so that LeBoeuf recovers the remaining amount of the funds in the escrow account. Finding that the trial court abused its discretion in awarding LeBouef attorney's fees, we reverse the portion of the judgment awarding LeBoeuf attorney's fees and render judgment that LeBoeuf take nothing on her claim for attorney's fees. Finally, we reverse the judgment awarding Stephenson no attorney's fees and render that Stephenson recover attorney's fees in the amount of $34,400.00 for trial, $10,000.00 in the event of appeal to the court of appeals, and $10,000.00 for appeal to the Texas Supreme Court.