COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





MARIA LOURDES RODRIGUEZ,

                                    Appellant,

v.

DUNCAN M. CROWELL,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-07-00269-CV

Appeal from
 205th District Court

of El Paso County, Texas

(TC # 2005-1142)



 

 

 




O P I N I O N

            This appeal involves a latent occupational disease claim involving a bacterial infection
known as psitticosis. Psittacosis can be transmitted to humans from birds such as pigeons, parrots,
parakeets, chickens, and turkeys. Transmission generally occurs when humans inhale infected
particles from bird droppings. Such is the case here, and pigeons were the carriers.
            Maria Lourdes Rodriguez filed suit against Duncan M. Crowell under legal theories of
negligence and premises liability. The trial court granted Crowell’s motion for summary judgment
based on a limitations defense and denied Rodriguez’s motion for leave to amended her pleadings. 
For the reasons that follow, we affirm. 
FACTUAL BACKGROUND
            Maria Rodriguez worked for the Texas Department of Human Services for twelve years. She
terminated her employment in late 2003 upon her doctor’s instructions. She began working at the
office building in question around 1995. A year or two later, she started experiencing shortness of
breath and a general feeling of malaise. A physician treated her for depression, but her respiratory
difficulties continued. She noticed that she couldn’t dance and she couldn’t walk. She also suffered
from seizures beginning in May 2001. She consulted a neurologist, Dr. A.B. Baca, and visited the
Barrow Neurology Clinic in the summer of 2002. While the cause of the seizures remained
undetermined, Rodriguez took medication for her symptoms between 2001 and 2003. 
            Rodriguez began to notice that her health condition improved whenever she left the building. 
She volunteered for assignments to travel out of town because she felt ill at her assigned workplace. 
The record indicates that this general feeling dated back to 1997. Finally at some point in 2003, she
presented to Dr. Ambrose Aboud. By July 11 of that year, Dr. Aboud had diagnosed her with
psittacosis based on a history of shortness of breath and a biopsy of a nodule in her lung. No other
doctor has ever diagnosed Rodriguez with a work-related condition, and no physician – not even Dr.
Aboud – has attributed the seizure disorder to psittacosis.
            Rodriguez admittedly noticed pigeons all around her office building, including the break area. 
She told Dr. Aboud that the birds roosted in the building between the ceiling and the roof. Over the
years, there was a consistent presence of dust and debris filtering down from the ceiling of her
workplace. She was also aware that co-workers were complaining about air quality in the building
and that emails were circulated concerning “air quality issues”. She customarily deleted them
thinking that they addressed the air quality outside of the building. On March 5, 2002 Rodriguez
received a specific email from the State of Texas regarding employment health concerns and
workers’ compensation procedures. 
            Rodriguez filed suit on February 18, 2005 against Yandell Office Partnership, E.I.C. Co., and
Prima Corporation, Inc. Also named as defendants were Bruce Meyer, Douglas Crowell, and
Charles Hammond, individually and doing business as either Yandell Office Partnership or E.I.C. 
Rodriguez also joined the estates or the heirs of three deceased individuals who had allegedly done
business as Yandell Office Partnership or E.I.C. It was on this basis that Appellee Duncan Crowell
was sued as the heir of Robert Crowell, deceased. All of the other defendants were eventually non-suited and Crowell remained as the sole defendant. Summary judgment was granted in his favor
on June 28, 2007. 
PROPRIETY OF SUMMARY JUDGMENT
Standard of Review
            The standard of review for traditional summary judgment is well established. Nixon v.
Mr. Property Management Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries
the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a
matter of law. Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005); Duran v. Furr’s
Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied). Evidence favorable
to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. 
Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004); Duran, 921 S.W.2d
at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. Id.; Duran, 921 S.W.2d at 784.
            A defendant moving for summary judgment on the affirmative defense of limitations has the
burden to conclusively establish that defense. KPMG Peat Marwick v. Harrison County Housing
Finance Corp., 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove
when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled
or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about
when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the
nature of its injury. Id. If the movant establishes that the statute of limitations bars the action, the
non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the
statute of limitations. Id. 
Statute of Limitations
            A plaintiff must commence a suit for personal injuries within two years after the day the
cause of action accrues. See Tex.Civ.Prac.&Rem.Code Ann. § 16.003(a)(Vernon Supp. 2009). 
Because the accrual date is not defined by statute, the courts are charged with the responsibility of
articulating the rules governing accrual. See, e.g., S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996); see also
Developments in the Law: Statutes of Limitations, 63 Harv. L.Rev. 1177, 1185 (1950). In most
cases, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff
learns of that injury or whether all resulting damages have yet to occur. See S.V., 933 S.W.2d at 4.
However, in those rare cases when the nature of the injury incurred is inherently undiscoverable and
the evidence of injury is objectively verifiable,” the Texas Supreme Court applies a judicially crafted
exception to the general rule of accrual, known as the discovery rule. Computer Assocs. Int’l, Inc.
v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996). Under this rule, a cause of action does not accrue
until a plaintiff knows or, through the exercise of reasonable care and diligence, “should have known
of the wrongful act and resulting injury.” S.V., 933 S.W.2d at 4, citing Trinity River Auth. v. URS
Consultants, Inc., 889 S.W.2d 259, 262 (Tex. 1994)). Once these requirements are satisfied,
limitations commence even if the plaintiff does not know the exact identity of the wrongdoer. See,
e.g., Russell v. Ingersoll-Rand Co., 841 S.W.2d 343, 344 n.3 (Tex. 1992); Moreno v. Sterling Drug,
Inc., 787 S.W.2d 348, 351 (Tex. 1990).
            The Texas Supreme Court applied these rules and principles to latent occupational diseases
in the two companion cases of Childs v. Haussecker and Martinez v. Humble Sand & Gravel, which
were decided together and are reported at 974 S.W.2d 31, 36 (Tex. 1998). Both cases involved
silicosis, a latent occupational disease. Id. The court stated the summary judgments would only be
proper if the movants negated the discovery rule by establishing that no genuine issue of material
fact existed concerning when the non-movants experienced symptoms for a degree or for a duration
that would have put a reasonable person on notice that he suffered from some injury and he
discovered or, in the exercise of reasonable diligence should have discovered, the likely casual
connection between the symptoms and the occupational exposure. Id. The commencement of the
limitations period may be determined as a matter of law if reasonable minds could not differ about
the conclusion to be drawn from the facts in the record. Id. 
The Facts of Childs v. Haussecker
            Joseph Haussecker was a sandblaster by trade and began working for AMF Tuboscope in
1961. In 1967, Haussecker visited his family doctor and complained about shortness of breath,
wheezing, coughing, and spitting up blood. He was prescribed medication for the wheezing. When
he consulted his physician the next year, he was told he suffered problems with his prostate gland. 
His prolonged fever and cough was attributed to lymphoma or Hodgkin’s disease. In June 1968, a
lung specialist performed a bronchoscopy and diagnosed a granuloma of the right lung. Both the
family physician and the lung specialist specifically told Haussecker his condition was not work-related. Over the next ten years, his health deteriorated. He stopped working in 1978 and began
receiving social security disability. In 1988, a second lung specialist suspected Haussecker had
silicosis. A lung biopsy in 1990 confirmed the diagnosis. 
            In its opinion, the Supreme Court noted that Haussecker knew he was injured long before
1988. Childs, 974 S.W.2d at 44. While he might not have known the precise nature of the injury,
his prolonged and progressively debilitating symptoms indicated a serious condition. Id. But the
court questioned at what point Haussecker connected or reasonably should have connected his
symptoms to his work environment. Id. at 45. He had diligently attempted to ascertain the cause
of his health problems by consulting several doctors, all of whom told him his condition was not
work-related. On the other hand, Haussecker knew that several of his co-workers had respiratory
health problems similar to his, including one who died of silicosis. In fact, Haussecker filed a
worker’s compensation claim alleging he had silicosis. Additionally, one of his doctors advised him
not to return to his workplace. Id. at 45-46.
            The court held that when medical experts consistently reject a layperson’s suspicions by
expressly refuting an occupational connection or by exclusively suggesting causes that are not work-related, a fact question ordinarily arises about what a plaintiff should reasonably know and what
further action the plaintiff should have taken, even if the plaintiff knows that co-workers suffer from
similar symptoms. Because reasonable minds could differ as to when Haussecker knew or should
have known through the exercise of reasonable diligence about a likely casual connection between
his symptoms and his occupational exposure, the defendant was not entitled to judgment as a matter
of law based on limitations. Id. at 46.
The Facts of Martinez v. Humble Sand & Gravel
            Jose Martinez also worked as a sandblaster from 1978 until 1984. In 1989, he filed a
workers’ compensation claim for “a lung disease arising out of an in the course of his employment.”
On the claim form, he stated that the disease first manifested a month earlier. He admitted in his
deposition that the claim was merely a precaution because while he was experiencing only minor
problems, his brother had been diagnosed with silicosis four years earlier. Martinez first consulted
a doctor in September 1990. Dr. Wiesenfield recommended a biopsy, but Martinez could not afford
it. The procedure was performed a year later and Martinez was diagnosed with silicosis. He filed
suit in 1992. 
            In its opinion, the Supreme Court faulted Martinez for not diligently seeking medical
treatment for a year after his breathing problems first appeared. Martinez, 974 S.W.2d at 47. But 
Humble Sand offered no evidence that a diligent investigation would have led Martinez to discover 
his occupational illness before 1990. It thus concluded that a fact question remained with respect
to whether Martinez knew or should have known through the exercise of reasonable diligence that
his injury was likely work-related before 1990. 
Articulation of the Rule
            In the Childs and Martinez companion cases, the Supreme Court articulated the rule to be
applied in the context of latent occupational diseases:
We therefore hold that the approach that best balances the interests implicated in
latent occupational disease cases is one that defers accrual until a plaintiff’s
symptoms manifest themselves to a degree or for a duration that would put a
reasonable person on notice that he or she suffers from some injury and he or she
knows, or in the exercise of reasonable diligence should have known, that the injury
is likely work-related. Thus, in cases involving latent occupational diseases,
‘discovery of the injury’ should not be equated with a plaintiff’s discovery (1) of the
precise name of the disease that is causing his symptoms or (2) that the disease is
permanent. The seriousness of a personal injury need not be fully apparent or even
fully developed in order to commence the statute of limitations.

Childs, 974 S.W.2d at 40-41. The accrual of a cause of action is not dependant on a confirmed
medical diagnosis because a plaintiff whose condition has not yet been affirmatively diagnosed by
a physician can have or, in the exercise of reasonable diligence could have, access to information that
requires or would require a reasonable person to conclude she likely suffers from a work-related
illness. Id. at 42. Even if the plaintiff lacks such information, her cause of action will accrue if the
absence of due diligence is responsible for the deficiency. Id. On the other hand, “a latent
occupational disease cause of action should not be deemed to accrue absent some objective
verification of a casual connection between injury and toxic exposure, provided that the failure to
obtain that verification is not occasioned by a lack of due diligence.” Id. at 43. Therefore, a diligent
plaintiff’s mere suspicion or subjective belief that a casual connection exists between his exposure
and his symptoms is insufficient to establish accrual as a matter of law. Id. 
Analysis
            Rodriguez argues that her claim accrued in July 2003 when Dr. Aboud diagnosed the
psitticosis. She contends that the evidence shows that she became ill at work and only attributed it
to her exposure to the bird droppings in hindsight. She sought medical treatment in 2002, but no
cause was determined. And she maintains that prior to Dr. Aboud’s diagnosis in 2003, no other
physician ever connected her medical condition to her workplace environment. Finally, she argues
that the emails circulated to employees did not put her on alert that the external bird waste was
causing employees to have respiratory problems. Given the summary judgment evidence, she
concludes that reasonable minds could differ about when she knew or should have known through
the exercise of reasonable diligence about the likely casual connection between her symptoms and
her occupational exposure. 
            Crowell responds that the record clearly reflects that Rodriguez felt ill and suffered shortness
of breath, a symptom of psittacosis, since at least 1996 or 1997. Her symptoms were severe enough
that she went to a doctor and was diagnosed with depression, another symptom related to psittacosis. 
She knew before early 2002 that her co-workers were complaining about air quality issues. She was
aware that her employer sent emails directing the employees to seek medical attention and instructing
them how to file worker’s compensation claims. Moreover, Rodriguez suspected her physical
problems were related to her workplace since the late 1990’s and she purposefully sought out of
town assignments. 
            We agree with Crowell. Viewing the evidence in Rodriguez’s favor, the record establishes
that her symptoms manifested to a degree and for a duration that would put a reasonable person on
notice that she had been injured and that she knew or should have known that the injury was likely
work-related. While her physicians did not deliver an ultimate diagnosis of psitticosis until 2002,
the law does not require a final diagnosis. Childs, 974 S.W.2d at 42. The evidence demonstrates
that Rodriguez had more than a mere subjective belief and had both reason to believe and objective
verification that she had been injured no later than March 2002. Because she waited more than two
years after her cause of action accrued, her claim is barred by limitations. See Tex.Civ.Prac.&
Rem.Code Ann. § 16.003(a). We overrule Point of Error One.
SPECIAL EXCEPTIONS AND MOTION FOR LEAVE
            Rodriguez filed her petition on February 18, 2005. On July 11, 2006, Crowell filed his first
amended answer which contained a verified denial, affirmative defenses, and special exceptions. 
He specifically claimed “there is no viable cause of action plead against Duncan M. Crowell” and
asked the court to require Rodriguez to amend her pleadings so as to state a cause of action against
him. On April 4, 2007, Crowell filed a motion for summary judgment claiming that Rodriguez’s
lawsuit was barred by the two-year statute of limitations. He also alleged that her live petition lacked
specific allegations against him. 
            At the hearing, the trial court delayed ruling on the merits of the motion for summary
judgment and asked the parties for additional briefing regarding numerous issues. One of the matters
Rodriguez briefed was the propriety of special exceptions in the context of a summary judgment
proceeding. Contemporaneous with the filing of her trial brief, Rodriguez filed a motion for leave
to amend her pleadings. The trial court granted summary judgment and denied Rodriguez’s motion
for leave to amend. 
            Rodriguez brings three points of error related to Crowell’s special exceptions and the trial
court’s denial of her motion for leave to amend. In Point of Error Two, she claims Crowell waived
his special exceptions by not obtaining a written order such that they cannot serve as the basis of
either the summary judgment relief granted by the trial court or the court’s rejection of her efforts
to plead her cause with more specificity. But there is no evidence in the record to support her
assertion that the trial court relied on the special exceptions to grant the motion for summary
judgment. The final order is silent as to the grounds for granting the summary judgment. Where the
trial court’s judgment does not specify the ground or grounds relied upon for its ruling, the summary
judgment must be affirmed on appeal if any of the theories advanced is meritorious. Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989). Here, the trial court could have relied on the running
of the statute of limitations to grant summary judgment. We overrule Point of Error Two. We
overrule Point of Error Three for the same reason. Rodriguez suggests that the trial court abused its
discretion in dismissing her suit based on insufficient pleadings without allowing her an opportunity
to amend. Once again, the final order does not support her assumption that the trial court granted
summary judgment based on her failure to state a claim.
            Finally, in Point of Error Four, Rodriguez avers that the trial court abused its discretion by
denying her motion for leave to amend her pleadings. We review the court’s ruling for an abuse of
discretion. State Bar of Texas v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994). A court has no
discretion to refuse an amendment unless the opposing party presents evidence of surprise or
prejudice, or the amendment asserts a new cause of action or defense, and thus is prejudicial on its
face, and the opposing party objects to the amendment. Greenhalgh v. Service Lloyds Ins. Co., 787
S.W.2d 938, 939 (Tex. 1990), citing Hardin v. Hardin, 597 S.W.2d 347, 350-51 (Tex. 1980). The
burden of showing prejudice or surprise rests on the party resisting the amendment. Greenhalgh, 787
S.W.2d at 939. An amendment is mandatory if it is merely procedural in nature such as conforming
the pleadings to the evidence at trial. Stephenson v. LeBoeuf, 16 S.W.3d 829, 839 (Tex.App.--Houston [14th Dist.] 2000, pet. denied), citing Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,
844 S.W.2d 664, 665 (Tex. 1992). An amendment is not mandatory if it changes the nature of the
trial. See Chapin, 844 S.W.2d at 665. A proposed trial amendment that asserts a new cause of
action may be prejudicial on its face, but this does not make it prejudicial as a matter of law.
LeBoeuf, 16 S.W.3d at 839. The amendment must be evaluated in the context of the entire case. Id. 
To be prejudicial, the amendment must reshape the nature of the trial, the opposing party could not
anticipate it in light of the development of the case up to the time the amendment was requested, and
the opposing party’s presentation of the case would be detrimentally affected by the filing of the
amendment. Id. The question is not whether the opposing party did in fact anticipate it, but rather
whether it could have been anticipated. Id. It is well established that a party may amend its pleading
after verdict but before judgment. Greenhalgh, 787 S.W.2d at 940.
            While Crowell made no showing of surprise or prejudice, the amendment would have no
impact on the running of the statute of limitations. Had Rodriguez amended the petition to include
new claims not subject to a similar statute of limitations, then Crowell would be able to clearly
demonstrate both surprise and prejudice. See Greenhalgh, 787 S.W.2d at 939, citing Hardin, 597
S.W.2d at 350-51. We overrule Point of Error Four and affirm the judgment of the trial court. 

December 22, 2009                                                     
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.