COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-267-CV
 
 
IN 
THE INTEREST OF J.J.O.
 
 
 
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        After 
a bench trial, the trial court found by clear and convincing evidence that 
Appellant Cynthia O. had: (1) knowingly placed or knowingly allowed her child 
J.J.O. to remain in conditions or surroundings which endanger her physical or 
emotional well-being; (2) engaged in conduct or knowingly placed J.J.O. with 
persons who engaged in conduct which endangers her physical or emotional 
well-being; (3) had her parent-child relationship terminated with respect to 
another child based on a finding that her conduct violated section 161.001(1)(D) 
or (E) of the Texas Family Code[2] or substantially 
equivalent provisions of the law of another state; and (4) been the cause of 
J.J.O. being born addicted to alcohol or a controlled substance, other than a 
controlled substance legally obtained by prescription, as defined by section 
261.001 of the Texas Family Code.[3]  The trial 
court also found by clear and convincing evidence that termination of the 
parent-child relationship between Cynthia and J.J.O. was in the child’s best 
interest. The trial court entered an order terminating the parent-child 
relationship between Cynthia and J.J.O. Because we hold that the evidence is 
sufficient to prove that Cynthia engaged in conduct which endangered J.J.O.’s 
physical or emotional well-being and that termination is in J.J.O.’s best 
interest, we affirm the trial court’s judgment.
I. 
Background Facts
        Dawn 
Adkins, a former CPS caseworker who was assigned to this case, testified for the 
State. According to her testimony, while termination proceedings were pending 
regarding the relationship between Cynthia and J.J.O.’s older sister, Cynthia 
tested positive for cocaine. When she was seven months pregnant with J.J.O., 
Cynthia was arrested for possession of drug paraphernalia. After her parental 
rights were terminated regarding the older sister, and three days before she 
delivered J.J.O., Cynthia used cocaine again. J.J.O was born on January 9, 2003, 
with cocaine in her system, but there is no evidence in the record that she has 
suffered adverse effects from it. Cynthia’s medical records from the hospital 
stay show the presence of cocaine in her system and a chemical dependency. The 
records also show that Cynthia obtained little or no prenatal care.
        During 
the pendency of the prior case regarding J.J.O.’s older sister, Cynthia was 
homeless, unemployed, had no transportation, and had suggested no one else who 
could raise her child. CPS worked with Cynthia for eight or nine months in the 
prior case, but she was noncompliant, refused treatment, disappeared for three 
months, and surfaced only after getting arrested. Having already offered Cynthia 
a service plan including services such as parenting classes, counseling, drug 
treatment, and inpatient care with the prior case, services which she absolutely 
refused, CPS was not obligated to provide a service plan for Cynthia in this 
case.[4]  When the caseworker told Cynthia that 
CPS planned to seek termination of the relationship between Cynthia and J.J.O., 
Cynthia told the caseworker that she was willing to participate in treatment. 
The caseworker encouraged her to do that, but testified that she did not believe 
Cynthia ever followed through on her intentions. The caseworker did not provide 
additional information to Cynthia regarding drug treatment at this point. She 
had already given her information about Tarrant Counsel, the MHMR program for 
drug and alcohol abuse. Cynthia said she was going to talk to Tarrant Counsel, 
but there is no evidence that she did.
        While 
Cynthia suggested J.J.O.’s alleged father as someone who could take care of 
her, CPS could not locate him despite a diligent search. The caseworker 
testified that Cynthia did not suggest any alternate placements for J.J.O. other 
than the alleged father.
        Finally, 
the caseworker testified that Cynthia attended a majority of the scheduled 
weekly visits with J.J.O., but she missed an entire month of visits, and her 
last visit occurred sometime in May 2003 before the trial in August 2003. 
Adkins’s employment with CPS ceased on June 6, 2003.
        When 
J.J.O. left the hospital, she was placed with the same foster family as her 
older sister. She has remained with that family during her entire time in foster 
care. She has thus bonded with her sister and her foster family, which includes 
an adopted son. Her foster family wants to adopt both girls. All her physical 
and emotional needs are being met in the home. The foster mother testified that 
J.J.O. had eating problems at first, but she outgrew them. She also stated that 
there may be problems with J.J.O.’s vision and hearing, for which Early 
Childhood Intervention is offering services. Additionally, she testified that 
J.J.O. was a very quiet baby and is still very quiet. Other than those areas, 
J.J.O. is developmentally on-target. The foster mother testified that J.J.O. 
sees her foster parents as her parents and that it would be devastating to 
J.J.O. and her sister if they were removed from their foster family. Cynthia did 
not testify.
II. 
No Forfeiture 
of Issues Absent from Statement of Points
        Initially, 
we note that the State encourages us to reconsider our prior holdings regarding 
the interpretation and effects of section 263.405 of the Texas Family Code.[5]  We decline to do so.  We likewise decline to 
hold Cynthia’s fourth, fifth, seventh, and eighth issues forfeited because of 
their absence from Cynthia’s statement of issues on appeal.
III. 
Standard of Review
        A 
parent’s rights to “the companionship, care, custody, and management” of 
his or her children are constitutional interests “far more precious than any 
property right.”[6]  “While parental rights 
are of constitutional magnitude, they are not absolute. Just as it is imperative 
for courts to recognize the constitutional underpinnings of the parent-child 
relationship, it is also essential that emotional and physical interests of the 
child not be sacrificed merely to preserve that right.”[7]  
In a termination case, the State seeks not just to limit parental rights but to 
end them permanently—to divest the parent and child of all legal rights, 
privileges, duties, and powers normally existing between them, except for the 
child’s right to inherit.[8]  We strictly 
scrutinize termination proceedings and strictly construe involuntary termination 
statutes in favor of the parent.[9]
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child.[10] 
Both elements must be established; termination may not be based solely on 
the best interest of the child as determined by the trier of fact.[11]
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by “clear and 
convincing evidence.”[12]  This intermediate 
standard falls between the preponderance standard of ordinary civil proceedings 
and the reasonable doubt standard of criminal proceedings.[13] 
It is defined as the “measure or degree of proof that will produce in 
the mind of the trier of fact a firm belief or conviction as to the truth of the 
allegations sought to be established.”[14]
        The 
higher burden of proof in termination cases alters the appellate standard of 
legal sufficiency review.[15]  The traditional 
no-evidence standard does not adequately protect the parent’s constitutional 
interests.[16]  In reviewing the evidence for 
legal sufficiency in parental termination cases, we must determine “whether 
the evidence is such that a factfinder could reasonably form a firm belief or 
conviction” that the grounds for termination were proven.[17]  
We must review all the evidence in the light most favorable to the finding and 
judgment.[18]  This means that we must assume 
that the factfinder resolved any disputed facts in favor of its finding if a 
reasonable factfinder could have done so.[19]  
We must also disregard all evidence that a reasonable factfinder could have 
disbelieved.[20]  We must consider, however, 
undisputed evidence even if it does not support the finding.[21]
        The 
higher burden of proof in termination cases also alters the appellate standard 
of factual sufficiency review.[22] “[A] finding 
that must be based on clear and convincing evidence cannot be viewed on appeal 
the same as one that may be sustained on a mere preponderance.”[23]  In considering whether the evidence of termination 
rises to the level of being clear and convincing, we must determine “whether 
the evidence is such that a factfinder could reasonably form a firm belief or 
conviction” that the grounds for termination were proven.[24]  
Our inquiry here is whether, on the entire record, a factfinder could reasonably 
form a firm conviction or belief that the parent violated one of the conduct 
provisions of section 161.001(1) and that the termination of the parent’s 
parental rights would be in the best interest of the child.[25]  
We must uphold only one finding under section 161.001(1) and the best interest 
finding to hold the evidence sufficient to support termination.[26]
IV. 
Analysis
A. 
Endangering Conduct
        In 
her third issue, Cynthia explicitly challenges the legal sufficiency of the 
finding that she engaged in conduct or knowingly placed J.J.O. with persons who 
engaged in conduct which endangers J.J.O.’s physical or emotional well-being 
because J.J.O. was never exposed to Cynthia. Specifically, Cynthia argues that 
J.J.O. was not a child until her birth, and that there is no evidence Cynthia 
ever endangered her because J.J.O. has been in the care of others (the hospital 
and foster parents) since her birth. There is no evidence that others endangered 
J.J.O. after her birth. Cynthia further argues that the statute requires a 
present danger to J.J.O.
        From 
her discussion of this issue, it is clear that Cynthia necessarily views the 
evidence as factually insufficient.[27]  We are 
unwilling to decide the issue of “[t]he termination of parental rights, 
fundamental and constitutional in their magnitude, . . . on trifling points 
regarding the construction of appellate briefs. It has long been ‘our practice 
to liberally construe (briefs) in order to obtain a just, fair and equitable 
adjudication of the rights of the litigants.’”[28]  
In the interest of justice and judicial economy, we therefore hold that in the 
particular case before us, the issue of the factual sufficiency of the evidence 
supporting the finding on 161.001(1)(E) is a subsidiary issue within Cynthia’s 
no-evidence issue and we will address it.[29]
        As 
this court held in In re R.W.,
 
B.B. 
contends that termination was not proper based on section 161.001(1)(E) because 
he never had custody of R.W. at any time after her birth other than one hour of 
supervised visitation per week. Moreover, he maintains that remote and isolated 
incidents that occurred prior to R.W.’s birth do not constitute sufficient 
evidence to establish an endangering course of conduct. TDPRS maintains, 
however, that B.B.’s history of substance abuse, mental health issues, and 
sexual and criminal misconduct clearly demonstrates an endangering course of 
conduct that posed both physical and emotional danger to R.W.’s well-being.
 
Under 
section 161.001(1)(E) of the Texas Family Code, the term ‘endanger’ means to 
expose to loss or injury, to jeopardize. Accordingly, when analyzing a jury’s 
findings pursuant to subsection (E), we must determine whether sufficient 
evidence exists that the endangerment of the child's physical well-being was the 
direct result of the parent's conduct, including acts, omissions, or failures to 
act. Termination under section 161.001(1)(E) must be based on more than a single 
act or omission; a voluntary, deliberate, and conscious course of conduct by the 
parent is required. However, it is not necessary that the parent's conduct be 
directed at the child or that the child actually suffer injury. The specific 
danger to the child's well-being may be inferred from parental misconduct 
standing alone.
 
To 
determine whether termination is necessary, courts may look to parental conduct 
both before and after the child's birth. Further, a father’s conduct prior to 
the establishment of paternity may be considered as evidence of an endangering 
course of conduct. Consequently, scienter is only required under subsection (E) 
when a parent places the child with others who engage in an endangering 
course of conduct.
 
As 
a general rule, conduct that subjects a child to a life of uncertainty and 
instability endangers the physical and emotional well-being of a child. Drug use 
and its effect on a parent’s life and his ability to parent may establish an 
endangering course of conduct.[30]

 
        Based 
upon our review of the evidence of Cynthia’s course of conduct—her unstable 
lifestyle, her refusal to comply with the service plan and accept treatment 
while the prior case was pending, her decisions to engage in illegal drug use 
not only while she was at risk of losing the older child but, more importantly, 
while she was pregnant with J.J.O., her failure to express willingness to get 
treatment until after she was told CPS planned to seek termination of her rights 
to J.J.O., and her failure to get adequate prenatal care, we hold that the 
evidence is legally and factually sufficient to support the trial court’s 
finding that she engaged in conduct that endangered J.J.O.’s physical or 
emotional well-being. We overrule Cynthia’s third issue and do not reach the 
second or the fourth through the ninth issues relating to the sufficiency of the 
evidence on the other grounds for termination.[31]
B. 
Best Interest
        In 
her first issue, Cynthia challenges the factual sufficiency of the trial 
court’s best interest finding.
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:

(1)the 
desires of the child;
 
(2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
(9)any 
excuse for the acts or omissions of the parent.[32]

 
These 
factors are not exhaustive. Some listed factors may be inapplicable to some 
cases; other factors not on the list may also be considered when appropriate.[33]  Furthermore, undisputed evidence of just one 
factor may be sufficient in a particular case to support a finding that 
termination is in the best interest of the child.[34]  
On the other hand, the presence of scant evidence relevant to each Holley 
factor will not support such a finding.[35]
        J.J.O., 
who is now approximately sixteen months old, is in the only home she has ever 
known. She is with her biological sister, a foster brother, and dual licensed 
foster parents who are eager to adopt both girls. The record demonstrates that 
the foster family can meet and is meeting all of J.J.O.’s needs. The record 
does not demonstrate that Cynthia can meet any of J.J.O.’s needs. Based on all 
of the evidence, we hold that the evidence is factually sufficient to support 
the best interest finding. We overrule Cynthia’s first issue.
V. 
Conclusion
        Having 
affirmed the trial court’s findings that Cynthia engaged in conduct which 
endangered the physical or emotional well-being of J.J.O. and that termination 
is in J.J.O.’s best interest, we affirm the judgment of the trial court.
 
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
  
  
PANEL 
B:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.
DELIVERED: 
May 6, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Tex. Fam. Code Ann. § 
161.001(1)(D), (E) (Vernon 2002).
3.  
Id. § 261.001.
4.  
See id. § 262.2015.
5.  
See, e.g., In re S.J.G., 124 S.W.3d 237, 240-43 (Tex. 
App.—Fort Worth 2003, pet. denied); In re W.J.H., 111 S.W.3d 707, 
712-13 (Tex. App.—Fort Worth 2003, pet. denied); In re D.R.L.M., 84 
S.W.3d 281, 290-91 (Tex. App.—Fort Worth 2002, pets. denied).
6.  
Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).
7.  
In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).
8.  
Tex. Fam. Code Ann. § 
161.206(b) (Vernon Supp. 2004); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 
1985).
9.  
Holick, 685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 625, 630 (Tex. 
App.—Fort Worth 2000, pet. denied) (op. on reh’g).
10.  
Tex. Fam. Code Ann. § 161.001; Richardson 
v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v. Swate, 72 S.W.3d 
763, 766 (Tex. App.—Waco 2002, pet. denied).
11.  
Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
12.  
Tex. Fam. Code Ann. §§ 
161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980).
13.  
G.M., 596 S.W.2d at 847; D.T., 34 S.W.3d at 630.
14.  
Tex. Fam. Code Ann. § 101.007 
(Vernon 2002).
15.  
In re J.F.C., 96 S.W.3d 256, 265 (Tex. 2002).
16.  
Id.
17.  
Id. at 265-66.
18.  
Id. at 266.
19.  
Id.
20.  
Id.
21.  
Id.
22.  
C.H., 89 S.W.3d at 25.
23.  
Id.
24.  
Id.
25.  
Id. at 28.
26.  
In re R.W., 129 S.W.3d 732, 736 (Tex. App.—Fort Worth 2004, pet. 
filed); In re D.M., 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no 
pet.); In re S.F., 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no 
pet.); see also Tex. R. App. P. 47.1.
27.  
See In re D.S.A., 113 S.W.3d 567, 569 (Tex. App.—Amarillo 2003, no 
pet.) (stating that “if the evidence is factually sufficient, then, it is also 
legally sufficient. This is so because, logically, there cannot be ‘no 
evidence’ of record if the record contains enough evidence to enable the 
factfinder to reasonably form a firm belief or conviction as to the existence of 
pivotal facts.”).
28.  
In re L.M.I., 119 S.W.3d 707, 733 (Tex. 2003) (Hecht, J., dissenting) 
(citations omitted).
29.  
See Tex. R. App. P. 38.1(e), 38.9; Stephenson v. LeBoeuf, 
16 S.W.3d 829, 843-44 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).
30.  
In re R.W., 129 S.W.3d at 738-39 (citations ommited).
31.  
See Tex. R. App. P. 47.1.
32.  
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).
33.  
C.H., 89 S.W.3d at 27.
34.  
Id.
35.  
Id.