DAVID J. SCHENCK, JUSTICE, dissenting.
DISSENTING OPINION
Justice Scalia continued his discussion of the adversarial system as it relates to the resolution of issues brought forward by the parties: "Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research. "[1]
I agree with my colleagues that the motion below posed two grounds on which the trial court might have dismissed appellants' claims for lack of jurisdiction, and that the supreme court's decision in State v. Brownlow , 319 S.W.3d 649 (Tex. 2010), binds us to conclude that the trial court's detailed references to the standing issue-without making like reference to the ecclesiastical-abstention doctrine-cannot limit the reach of the judgment, though it likely influenced all parties in their understanding of the trial judge's intent. Where I disagree with the majority is with its adherence to prior panel precedent handed down shortly before and after the 1997 rules amendments, providing for the termination of the appeal rather than a resolution on the merits in the face of what we deem a briefing deficiency.[2] I write separately to explain why I believe those cases were incorrectly decided in view of several supreme court decisions and the plain language of rules 43.2 and 44.3, which governs the circumstances by which we might dismiss an appeal or affirm without regard to the merits, and rule 38.9, which governs the filing of a deficient brief in particular.
I. Background
The majority summarizes some of the historical facts and the course of proceedings in the district court. I pause to further develop that history as it relates to what I see as the need for re-examination and application of the rules that govern briefing waiver in this case.
Appellants, and others, became members of St. John Missionary Baptist Church, Inc. (the "Church") and provided their time, talent, and treasure in furtherance of its ministry. On September 27, 2014, the Church convened a specially called conference during which a majority of the members present voted to terminate Pastor Bertrain Bailey's contract. Members who participated in the specially called conference were then notified that their membership in the Church had been *319 revoked and that their appearance on Church property would be considered a trespass without further notice.
Notwithstanding the vote to terminate Pastor Bailey's contract, he refused to vacate the position and continued, with the acquiescence of appellee Church leaders, to conduct Church business. Appellees also participated in the alleged dissipation of Church assets and failed to provide financial accounting to the membership. Former parishioners, including appellants, filed this lawsuit and a separate forcible entry and detainer action against Pastor Bailey seeking to remove him.
The bylaws governing the Church that were in existence at the time appellants filed this lawsuit do not appear to contain a removal of membership provision. Subsequent to the filing of this lawsuit, however, appellees presented a form of bylaw containing the addition of a provision that immediately and automatically excommunicates any member who might seek to challenge the leadership of the Church in any court proceeding.[3] Appellees relied on this removal provision to argue a lack of standing in their plea to the jurisdiction, along with their related argument that the ecclesiastical-abstention doctrine bars challenges of any kind to the operation of the Church or the management of its property.
The trial court granted the plea in a one-sentence order that uses language relative to standing. That reference is contained in the recital portion of the trial court's judgment, however. Prior panel decisions, binding here and outside the call for en banc rehearing to address the broader issue of briefing waiver, control the interpretation of judgments and work to appellants' peril here as the decretal portion simply states the plea is granted without explicit limitation to the standing argument.[4]
Because of the broad decretal portion of the trial court's judgment, the mutual call to en banc hearing in this case addresses only the authority of panels to rule on the merits or to allow supplementation in briefing due to appellants' failure to address the ecclesiastical-abstention doctrine.
II. The Rules
Before addressing the precedents that led us to the present result, it is helpful to address the current rules and precedents governing their construction.
*320 Rule 42.3, entitled "Involuntary Dismissal in Civil Cases," actually governs both dismissal and affirmance of the appealed judgment on account of "the appellant['s] fail[ure] to comply with a requirement of these rules." TEX. R. APP. P. 42.3. While it authorizes the appellate court to dismiss or affirm on its own initiative, as we have here and in other cases, it requires us to give "ten days' notice to the parties" prior to doing so. Rule 44.3 addresses all defects in procedure, including briefing defects, and provides: "A court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." Id. 44.3. At one time, that rule was read to compel appellate courts to provide notice and opportunity to cure a briefing deficiency such as the one we confront here. See Inpetco, Inc. v. Tex. Am. Bank, 729 S.W.2d 300 (Tex. 1987) (per curiam). As discussed below, that ruling was later revised to leave courts "some discretion to choose between deeming a point waived and allowing amendment or re-briefing" before the addition of rule 38.9(b). Fredonia State Bank v. Gen. Am. Life Ins. Co. , 881 S.W.2d 279, 284 (Tex. 1994) (emphasis added). In 1997, rule 38.9, entitled "Briefing Rules to Be Construed Liberally" was amended to include a provision dealing specifically with briefing defects:
Substantive defects. If the court determines, either before or after submission, that the case has not been properly presented in the briefs, or that the law and authorities have not been properly cited in the brief, the court may postpone submission, require additional briefing, and make any other order necessary for a satisfactory submission of the case.
TEX. R. APP. P. 38.9(b).
Regardless of how we arrive at the conclusion that "the case has not been properly presented in the briefs"-that is, whether the brief fails to address an argument necessary to permit a merits resolution of the issue presented or fails to cite properly to the record or legal authority elsewhere- rule 38.9(b) directs us to a "satisfactory" submission, which is presumably one on the merits. Thus, nothing in the text of rule 38.9 exempts the deficiency at issue here from its broad application to briefs that fail to "properly present the case."
As detailed below, the supreme court has advised us, for more than a century, to give appellate rules "a reasonable and practical construction ... not one calculated to embarrass suitors in the appellate tribunal by unnecessary restrictions." Clarendon Land Inv. Agency v. McClelland Bros., 86 Tex. 179, 23 S.W. 1100, 1103 (1893) (on rehearing).[5] The rules, now as then, are to be read "reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." Republic Underwriters Ins. Co. v. Mex-Tex, Inc. , 150 S.W.3d 423, 427 (Tex. 2004). We should thus favor any "arguable interpretation" of the rules that would support a merits disposition. Ryland Enter. v. Weatherspoon , 355 S.W.3d 664, 665 (Tex. 2011).
III. A Brief History of Briefing Waiver[6] *321 A. Pre-1997 Amendments
Under the first dedicated rules of appellate procedure, an appellant was required to identify and separately number "points of error" with parenthetical citation to the corresponding pages of the record where the issue had been addressed below.[7] See TEX. R. APP. P. 74(d) (former rules) (reprinted at 707 S.W.2d LXXIV (1986) ). Former rule 74(p) provided for re-briefing in cases of "flagrant violation," stressing that briefs were intended to "acquaint the court with the points relied on." Id. Paralleling current rule 44.3, the rules also directed that a case should not be decided on the basis of "defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend." See TEX. R. APP. P. 83 (former rules).
Beginning in 1987, the supreme court handed down a series of decisions that applied former rule 83 to briefing waivers. Compare Inpetco , 729 S.W.2d at 300 (disapproving court of appeals opinion finding waiver by failure to comply with briefing rules "without first ordering Inpetco to rebrief"), with Davis v. City of San Antonio , 752 S.W.2d 518, 521 (Tex. 1988) (refusing to remand to court of appeals where respondent failed to include argument seeking remand in its brief to the supreme court or to raise the issue until after argument in the supreme court). These decisions culminated in Fredonia , 881 S.W.2d 279. In Fredonia , the court adhered to "the settled rule" that an appellate court "has some discretion to choose between deeming a point waived and allowing amendment or re-briefing," stressing that "whether that discretion has been properly exercised depends on the facts of the case. " Id. at 284-85 (emphasis added). Intermediate courts were thus allowed "some discretion *322 in ordering re-briefing" with an eye toward balancing a just result with the need for a prompt resolution in each case. Id. at 285.
Our precedents following the 1987 Inpetco decision, severely limited its mandate to permit "re-briefing," or effectively ignored its rule. See, e.g. , Design Trends Imports v. Print Source, Inc. , No. 05-93-01643-CV, 1994 WL 728870, at *6 n.8 (Tex. App.-Dallas Dec. 22, 1994, no writ) (not designated for publication).[8] The court's opinions throughout this period appear to have treated an issue as waived by inadequate briefing without any apparent indication of consideration of Fredonia or the prospect of requesting re-briefing. See, e.g. , Tindle v. Jackson Life Ins. Co. , 837 S.W.2d 795, 801 (Tex. App.-Dallas 1992, no writ) ; Almanza v. Transcon. Ins. Co. , No. 05-95-00960-CV, 1996 WL 429303, at *5 (Tex. App.-Dallas July 23, 1996, no writ) (not designated for publication).
B. Briefing Waiver after the 1997 Amendments
On September 1, 1997, substantial amendments to the rules of appellate procedure took effect. These revisions were intended, among other things, to eliminate traps created by appellate court decisions and to effectuate the supreme court's desire to see cases decided on the merits instead of on procedural grounds. Stephenson v. LeBoeuf , 16 S.W.3d 829, 843 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). As relevant here, the amended rules abandoned the former "point of error" designation practice[9] and, as before, required notice and an opportunity to cure formal briefing deficiencies or affirmance for rules violations. TEX. R. APP. P. 42.3, 44.3. In addition, the rule mandating liberal construction of the briefing rules, captioned "Briefing Rules to Be Construed Liberally," was amended to address substantively deficient briefs, timing, and the options available to courts of appeals to assure "a satisfactory submission." Id. 38.9(b).
Notwithstanding the changes to the appellate rules, the court has not addressed in its opinions how rule 38.9(b) operates, either on its own or in conjunction with rules 42.3 and 44.3. In fact, our first panel decisions handed down following the amendment simply cited to the pre-amendment decisions without acknowledging the existence of the new rules or consideration of whether those prior cases had paid fidelity to Fredonia's case-by-case balancing and discretion requirements. See, e.g. , Smith v. Tilton , 3 S.W.3d 77, 87 (Tex. App.-Dallas 1999, no pet.) (citing pre-amendment authority and finding "point of error" waived); McIntyre v. Wilson , 50 S.W.3d 674, 680 (Tex. App.-Dallas 2001, pet. denied) (same). To be sure, some of these opinions relied on Malooly Bros., Inc. v. Napier , 461 S.W.2d 119 (Tex. 1970), for the proposition that a summary judgment will be upheld if the appellant fails to challenge a ground upon which the motion *323 may have been granted, notwithstanding that Malooly was grounded in the abandoned "point of error" designation regime and pre-dates the amendments to our rules, thus depriving the appellant of the opportunity to address the issue after having been given notice and the opportunity to cure under rule 38.9.[10] Of course rule 38.9(b) makes no distinction between briefs that do not properly present the case on account of a failure to address an argument, as opposed to a failure to cite sufficiently to the law or the record. In all of these circumstances, we have found the brief to foreclose a merits resolution and to preclude supplementation after submission since our early post- Inpetco cases. These decisions have been controlling pending intervening supreme court decision or this court ruling en banc, and thus our practice since has been simply to cite these cases and their progeny without discussion of rule 38.9(b). E.g., MobileVision Imaging Servs. v. LifeCare Hosp. of N. Tex. , 260 S.W.3d 561, 566 (Tex. App.-Dallas 2008, no pet.).
To the extent the majority addresses rule 38.9(b), it does so by observing its presence amongst the rest of the rules governing minutiae of briefing. The majority does not explain what deficiencies rule 38.9(b) would apply to or why its plain text would not apply here. It implies that it was designed to address formalistic errors and that a contrary reading that would allow a ruling on the merits or a cure to the briefs to facilitate one would be improper. This rationale seems out of place in view of the presence of the later, broader rules like 42.3 and 44.3. In any case, the majority's effort at an in pari materia reading of rule 38.9(b) to encompass only technical or formalistic omissions in an opening brief, ignores that rule 38 already incorporates a separate provision permitting correction of such errors in 38.9(a), which is predictably entitled "formal" defects. Rule 38.9(b) meanwhile addresses "substantive defects" without limitation as to type, cause, or description that results in a case not being presented in a manner that permits a merits decision at the time of submission. There is nothing remarkable about the placement of that language in the rule governing briefing.[11] Considering that the supreme court had already read the rules of more general application, like rule 44.3, to require (or at least permit) correction of briefs found to be deficient at the time of submission, it is not surprising that the supreme court would add the text concerning substantive briefing deficiencies directly into rule 38 governing briefing and *324 alongside rule 38.9(a), governing less substantive deficiencies, to promote compliance from inferior courts.
In any case, reading rule 38.9(b) to exclude substantive defects on grounds of in pari materia or to the exclusion of later rules places the interpretive cart before the textual horse to create an ambiguity that does not exist. We ought to read rule 38.9(b) together with the rest of the rules and not to nullify one or the other. In any event, even if one is to focus solely on rule 38, it addresses both formal and substantive defects and imposes obligations on lawyers and courts alike to follow it. There is no ambiguity within the rule to be reconciled by the in pari materia canon or any other constructive aid.
Finally, the majority suggests that reading rule 38.9(b) for its plain language, in harmony with itself and the rest of the rules, and in light of decisions from the supreme court itself governing briefing waiver and the drive for merits resolutions that informed the amendments would somehow result in our reversing the supreme court. That is not so. Malooly is a rule of substance.[12] Rule 38.9(b), though it governs substantive defects in briefs that preclude a satisfactory (i.e., merits) decision at the time of initial submission, is nevertheless a rule of procedure that was promulgated by the supreme court after Inpetco and Fredonia .[13] If a panel finds itself unable to issue a merits decision at submission for any reason, simply noting the problem and permitting opportunity for amendment or supplementation as it deems helpful does not alter the rule to one of substance or overrule Malooly . For example, where a panel deems it appropriate to require additional briefing and the requirement is not complied with, dismissal or affirmance is still the result and Malooly would still govern. See, e.g. , Albrecht v. Bank of N.Y. Mellon for CWABS, Inc. , No. 05-17-000272-CV, 2018 WL 992023, at *3, 6 (Tex. App.-Dallas Feb. 21, 2018, no. pet. h.) (mem. op.) (detailing cause for affirmance/dismissal where notice of egregious defects was given but not cured); In re S.F. , 2 S.W.3d 389, 391 (Tex. App.-San Antonio 1999, no pet.) (Duncan, J., dissenting) (complying with rule 38.9(b) ).
Moreover, echoing another en banc debate within our court shortly after Inpetco was handed down, the majority declares the rule to be inapplicable, as its decision here is not based on "briefing waiver" but on appellants' failure to show reversal of the judgment is required. But, as Justice Hecht observed in his concurrence of that en banc decision, the failure to address an argument, like the ecclesiastical exception in this case, is precisely the kind of procedural irregularity upon which a case should not be disposed. See Most Worshipful Prince Hall Grand Lodge v. Jackson , 732 S.W.2d 407, 414 (Tex. App.-Dallas 1987, writ ref'd n.r.e.) (en banc) (Hecht, J., concurring).
In reaching its conclusion, the majority begins with Justice Scalia's observation that we do not sit as self-appointed boards of inquiry, and then embarks sua sponte into the potential grounds or arguments below in search of unchallenged rationales *325 to compel the termination of the appeal.[14] While Texas courts no doubt have engaged on this self-directed inquiry for undesignated error for ages, they did so because the parties were once required to make designations below or on appeal before they proved the alleged error in the argument section of their brief. At this point, the general notice of appeal functions to designate every possible rationale as subject to attack and leaves to the brief itself both the description of the issue and the argument in support. The brief either does that, and is sufficient, or it does not, and is deficient. When the brief is deficient, the problem is addressed in the rules themselves without regard to the type of deficiency involved or the label appended to it.
The majority's contrary conclusion appears to rely on one of two notions. First, that the "issue" here is the ecclesiastical exception and that the appellants have not identified that issue in their statement of the issues-that is to say, echoing the language of Oliphant and the long abandoned assignment of error regime-that appellants have failed to assign error properly to the judgment on appeal. Alternatively, invoking Malooly's rule from the summary judgment context, the "issue" here is subject matter jurisdiction in the trial court and the brief fails to address an argument (i.e., a "ground" in Malooly parlance), and this failing compels affirmance without regard to the merits. Viewed as the former, the problem should be obvious. The assignment of error rules were abandoned decades ago to avoid exactly these kinds of tortured debates. We transitioned first to the point of error designation regime under which Malooly was decided and, then, to the current rules. As noted, a general notice of appeal from a final judgment now functions as a designation of every order and rationale that might have produced it . Gunnerman v. Basic Capital Mgmt., Inc. , 106 S.W.3d 821, 824 (Tex. App.-Dallas 2003, pet. denied). Unfortunately, our opinions, in both their language and, more worryingly, their substance, still appear to echo the ancient designation regime.
Malooly itself arose from the point of error system that still required a form of assignment, albeit in the brief itself as a separate statement of the points of error, giving rise to two distinct forms of briefing waiver: (1) failure to designate an order being appealed or a "ground" (i.e., an argument in support of an order) in the listed points of error;[15] and (2) failure to *326 include an adequate argument of the point in the body of the brief. Malooly sought to simplify summary judgment review in the point of error era by allowing a singular, broad statement of the issue and requiring development of the arguments or grounds in the argument portion of the brief. Thus, the majority's resort to Malooly underscores what would already appear obvious: that the standing and ecclesiastical exception are "grounds" or arguments related to the "issue" of the trial court's jurisdiction. Indeed, jurisdiction was the singular target of the plea that gave rise to the judgment and is subject to seemingly limitless grounds like the standing and abstention arguments raised below. As we no longer use "assignments" or "points" of error, the problem here is a failure to develop an argument as to one of the rationales offered below.
Having now adopted the federal "issues presented" practice and abandoned the pre-argument designation formalities that gave rise to Malooly,[16] the first question to be asked is whether we might simply ignore the problem and consider the arguments made below in connection with the broader issue of jurisdiction. The majority borrows from Justice Scalia's framing of prohibition on "issue" spotting, having already embarked on its own sua sponte foray into the grounds urged below. I agree with that portion of Justice Scalia's admonishment regarding issue spotting from which the majority quotes and the rest of his statement, which it does not. Justice Scalia went on to observe: "[o]f course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing [them] through our own deliberation and research." Regan , 714 F.2d at 177 ; see also Kamen , 500 U.S. at 100-01, 111 S.Ct. 1711 ; Greene v. Farmers Ins. Exch. , 446 S.W.3d 761, 764 n.4 (Tex. 2014) (distinguishing between "issues" and "arguments" for presentation and preservation purposes).[17] Following that rule, the ecclesiastical exception would be a "ground" (or argument) for purposes of Malooly , leaving us free to consider it on our own (or to allow supplementation as needed) as part of our examination of the "issue" of the trial court's jurisdiction without fear of the charge of exceeding our role as a neutral. Were it otherwise (i.e. , if the ecclesiastical exception was the "issue" here rather than an "argument"), Malooly would have no application and the majority's probing of the record for another "issue" would run afoul of the very rule on which it relies. Conversely, if the ecclesiastical exception is properly seen as an "argument" arising under the broader issue of jurisdiction for purposes of our sua sponte identification of its presence below, it *327 should continue to be so viewed for purposes of our ability to develop and address it under the federal practice to which Justice Scalia spoke.
Of course, the problem here is far more fundamental than the label applied to it or what Justice Scalia would have done with it under the federal rules. In fact, the rules currently in force in Texas were designed to pretermit these semantic debates. Our rule 38.9(b) does not use the terms "briefing waiver," "issue," or "argument" at all. It simply poses the question as whether the "case has been properly presented in the briefs." Nothing more. Nothing less. Rules 42.3 and 44.3 likewise go on and unambiguously constrain us from affirming judgments for failure to comply with the rules or for defects in procedure, regardless of how one describes the failing. Insofar as these rules admit of any debate in their construction, I once again find myself in agreement with the good late Justice Scalia: "We give the ... [r]ules of [c]ivil [p]rocedure their plain meaning, and generally with them as with a statute, when we find the terms ... unambiguous, judicial inquiry is complete." Pavelic & LeFlore v. Marvel Entm't Grp. , 493 U.S. 120, 123, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (internal citations omitted); accord In re City of Georgetown , 53 S.W.3d 328, 332 (Tex. 2001). As it seems plain that the case has not been properly presented in the briefs, the remaining question under the plain language of rule 38.9 is whether we have allowed for a satisfactory submission of the case.[18]
IV. A Satisfactory Submission is Usually One that Allows for a Merits Decision or Waives Only Where the Parties Have Received Notice of the Deficiency that Prevents it.
The text of rule 38.9 provides that an appellant need only comply with the rules substantially. TEX. R. APP. P. 38.9. If an appellant does not substantially comply with the rules, we have the discretion to do what is necessary to effect a satisfactory submission. Accordingly, we are to read the rule by its plain meaning and construe the rule liberally, and an appellant is not required to strictly comply with the rules. The majority opinion does not interpret the text of rule 38.9 according to its plain meaning, does not address the rule's requirement that we read briefing rules liberally and are allowed to make any order we deem necessary for satisfactory submission, and fails to acknowledge that an appellant does not have to do all the things the majority asserts the appellants had to have done here.
A plain, and certainly arguable, construction of rule 38.9(b) would recognize a panel's discretion to request additional briefing to allow for a satisfactory submission when an issue is identified but not properly presented in the brief. Notably, the rule itself contemplates "supplemental" briefs, as opposed to the earlier "re-briefing" mandate of Inpetco that some courts of appeal equated with the "intolerable" notion of essentially starting the appeal over. See, e.g. , King v. Graham Holding Co. , 762 S.W.2d 296, 298-99 (Tex. App.-Houston [14th Dist.] 1988, no writ). Thus, read according to its plain language, in relation to other rules,[19] and in view of the *328 supreme court's directive to favor a plausible construction that supports a merits-driven result, rule 38.9(b) does not call for a material disruption of the court's docket.
We of course have no obligation to search the record for issues not raised by the parties or ignore their failure to preserve the issues in the court below.[20] But, where the parties have in fact preserved the issues below, timely appealed, and identified the issues for a decision on appeal, a brief that fails to adequately cite to authority or the record, or that omits an argument that is deemed to be included in the trial court's disposition of the issue, should not be fatal to the appeal. Instead, that deficiency simply amounts to "a failure to properly present the case on the briefs" and affords the court a number of efficient options under the rules.
First, courts have always had the authority, though not the obligation, of summarily affirming the judgment on the merits based on their own review of the record or governing law where affirmance is obvious. Thompson v. Thompson , 12 Tex. 327, 329 (1854) (finding assignment of error insufficient but reaching merits); Brock v. Sutker , 215 S.W.3d 927, 929 (Tex. App.-Dallas 2007, no pet.) ; Most Worshipful Prince , 732 S.W.2d at 414. Thus, if after giving a brief the generous reading the rules direct, we are able to discern the issue,[21] but find ourselves confronted with a deficient argument, a summary affirmance of the issue does not deprive the appellant (or cross appellant) of a merits decision and does not prejudice the party opposite who prevailed below and invariably urges affirmance. In this case, I do not believe that summary affirmance is available as the standing issue presents potentially thorny factual and legal questions, and the ecclesiastical-abstention doctrine is inherently fact bound.
On the other hand, where the deficient submission of the issue does not readily lend itself to affirmance, waiver-without some notice and a brief opportunity to submit supplemental briefs-deprives the party raising the issue of a determination on the merits on account of a procedural failure. This, perforce, is not "a satisfactory submission." Texas courts have previously gone forward, despite an inadequate appellant's brief, and nevertheless reversed.[22] Embarking on our own analysis *329 and a decision that would reverse, by looking, for example, to the trial court briefing, deprives the appellee of the ability to augment his argument on appeal.[23] In all events, we have the discretion, informed by a preference for a merits resolution, to pursue a merits resolution where we deem it proper. The majority denies appellants substantive review of the issue they likely understood the trial court decided because appellants failed to brief an argument (or issue) they did not believe had been ruled upon. Couching the result as one driven by the lack of proof of harm ignores that the result is driven not by any merits consideration of the presence of error or harm, but our own sua sponte review of the record and application of prior precedent governing deficient briefs, avoiding the question of that precedent's fidelity to the rules and prior supreme court decisions applying them. This is the sort of injustice I believe this court has the discretion to prevent by requesting supplemental briefing under rule 38.9(b).
Unfortunately, our current precedent leads to the absurd result that an appellant who actually goes to the effort of preparing and submitting a brief but misses one of the grounds we later identify as possibly supporting the judgment (or fails to cite sufficient authority) loses without a decision on the merits, while the appellant who completely fails to file a competent brief is assured to receive notice of his failure and the right to later file an untimely brief. TEX. R. APP. P. 38.9(a), 44.3. Likewise, the appellant who files a deficient brief that is identified as such by the appellee is at least afforded the opportunity of seeking leave to submit supplemental briefing under rule 38.7's generous standard. In contrast, where, as here, neither party notices the deficiency, the first communication from the court now comes in the form of a terminal adverse judgment. But see TEX. R. APP. P. 43.2. While the majority states we cannot sua sponte identify issues, that is exactly what the court did here in identifying the ecclesiastical-abstention doctrine as a ground asserted below but not briefed here.
In this case, like in many others, the court, rather than the parties, has identified an argument made below and communicated it to the parties, although we do so in the form of a final judgment. That is not advocacy, it is adherence to our understanding of the rule laid down in Malooly. Likewise, if rule 38.9(b) can be read to afford notice of the deficiency prior to issuance of a final decision, simply giving that notice is not advocacy either. Providing an opportunity to cure the deficiency (or ruling despite the insufficiency where possible) simply facilitates a decision on the merits.
The outcome in this case is something that no member of the court prefers. It is driven by a series of technical, court-made doctrines beginning with the interpretation of the final order, continuing with Malooly and its application to foreclose consideration of the one ground identified to the parties in that final order, and concluding with the court's briefing waiver rules after Fredonia and the 1997 amendments. The supreme court's decision in Fredonia and the rules amendments of 1997 were intended to eliminate traps created by appellate court decisions such as these and to effectuate the supreme court's desire to see cases decided on the merits instead of on procedural grounds. Stephenson , 16 S.W.3d at 843. Adhering to Fredonia and reading the amended rules for their plain (or at least arguable) meaning would achieve both of those purposes.
*330 CONCLUSION
In this case, I would exercise the court's discretion under rule 38.9(b) to request additional briefing on the ecclesiastical-abstention doctrine as a potential ground for the trial court's decision.

Carducci v. Regan , 714 F.2d 171, 177 (D.C. Cir. 1983) (opinion for the court by Scalia, J.).

The argument section of the appellants' brief addresses only one of the two arguments (grounds) that were presented below in appellees' motion to dismiss and plea to the jurisdiction. The appellees likewise address only the question of standing and do not assert appellants' lack of briefing on the ecclesiastical-abstention doctrine as a basis for affirming the trial court's judgment.

Section 2.3 2. of the Church's bylaws provides, "The right hand of fellowship will be automatically withdrawn from any member who takes legal action against the church or church leadership without the approval of the Pastor, Board of Trustees and the membership of the church."

In the recital portion of its order granting appellees' amended motion to dismiss and plea to the jurisdiction, the trial court specifically relied on the pleadings, the arguments of counsel, and "the acknowledgement by both sides in open court during the hearing that the individual Plaintiffs are no longer members of the St. John Missionary Baptist Church, Inc." But, in the decretal portion of the order, the trial court granted appellees' amended motion without stating its basis for doing so. We recognize that when there is an explicit conflict between a trial court's recitals and the decretal portion of the judgment, we must focus on the decretal portion of the judgment. See Brownlow , 319 S.W.3d at 653 ; Nelson v. Britt , 241 S.W.3d 672, 676 (Tex. App.-Dallas 2007, no pet.). However, any discrepancy between the trial court's recitals and the decretal portion of the order in this case is only implicit, and the parties could have reasonably concluded the trial court's order was based on appellees' contention appellants did not have standing. As our precedents broadly regard the recital as "form[ing] no part of the judgment," we are obliged to follow the decretal portion despite how the parties might have understood the order as a whole. PMS Hospitality v. OM Realty Fin. Co. , No. 05-09-00923-CV, 2011 WL 258694, at *1 (Tex. App.-Dallas Jan. 28, 2011, no pet.) (mem. op.); Nelson , 241 S.W.3d at 676.

Fambrough v. Wagley , 140 Tex. 577, 169 S.W.2d 478, 482 (1943) ("Our present briefing rules were adopted for the purpose of simplifying the briefing of cases so that greater attention will be devoted to the presentation of the merits of the appeal, and less attention given to the mechanics of the brief.").

Our precedent at issue here may more properly be described as "briefing forfeiture." Kontrick v. Ryan , 540 U.S. 443, 458 n.13, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (quoting United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional relinquishment or abandonment of a known right.' ") ); United States v. Zubia-Torres , 550 F.3d 1202, 1205 (10th Cir. 2008) ("[W]aiver is accomplished by intent, [but] forfeiture comes about through neglect."). I will refer to our usual description of waiver to avoid confusion.

Under the original rules for the courts of civil appeals, the appellant (plaintiff in error) was required to give adequate notice of the judgment appealed in his notice and to assign "points of error." See Court Rules, 67 S.W. vii-xiv (1902). That practice, combined with highly formalized procedures in the trial court, like "bills of exception," heavily narrowed the universe of issues to be addressed in the brief on appeal. The error assignment regime was abandoned before World War II, though references to it continue to appear in modern decisions. See Brown Cty. Water Imp. Dist. v. McIntosh , 164 S.W.2d 722, 723 & n.1 (Tex. Civ. App.-Eastland 1942, writ ref'd w.o.m.) (pretermitting consideration of need to direct re-briefing of inadequate appellant's brief and detailing rules amendments to that time). Under the new rules, parties are now permitted to use the federal courts' "issues presented" practice rather than the former "point of error" practice. Stephenson v. LeBoeuf , 16 S.W.3d 829, 843 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (quotation omitted). The new "issues presented" practice signals the intention of the supreme court to have all appeals judged on the merits of controversies rather than hyper-technical waiver issues. Id. The federal practice we adopted was well developed at the time and distinguished between "issues," which, subject to few exceptions like subject matter jurisdiction, only the parties can raise, and the subsidiary arguments and authorities that resolve them, which a court is free to develop on its own. Kamen v. Kemper Fin. Servs. Inc. , 500 U.S. 90, 99-100, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ; Regan , 714 F.2d at 177 (Scalia, J.). Of course, "prudence," if not the plain language of rule 38, would often suggest avoidance of waiver and development through supplemental briefing. U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc. , 508 U.S. 439, 445-47, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993).

We first read Inpetco to apply only where all issues (and thus the whole appeal) were waived and later ignored it altogether. David Gunn, Unsupported Points of Error on Appeal , 32 S. Tex. L. Rev. 105, 126 (1990) (describing our jurisprudence at the time). In fairness, as Justice Cornelius noted, "this case produced a wave of confusion. ... Some courts of appeals simply ignored Inpetco , some distinguished it, and others seemingly refused to follow it." William J. Cornelius & David F. Johnson, Tricks, Traps and Snares in Appealing a Summary Judgment in Texas , 50 Baylor L. Rev. 813, 863 (1998).

"The new 'issues presented' practice allowed the statement of an issue to include subsidiary matters and signal[ed] the intention of the Texas Supreme Court to have all appeals judged on the merits of controversies rather than hypertechnical waiver issues." Stephenson , 16 S.W.3d at 843.

Ironically, the purpose underlying Malooly was to achieve the merits-driven preference expressed directly in the later amendments by requiring consideration of "grounds" on appeal notwithstanding that the appellate brief had not parsed them in a fashion reminiscent of the former assignment of error practice. That problem persists today with respect to summary judgment and several other trial court proceedings where the rules of civil procedure effectively retain the pre-appeal assignment requirements in the form of detailing the "grounds" on which the trial court might render a judgment. The question then remains in summary judgment cases and others like this one, of what should be done where an appeal by implication reaches to such a "ground" or "issue," but the brief omits it in such a way as would foreclose a merits decision. I believe that question is separately addressed in the rules that carried forward Malooly's preference for resolution on the merits as explained above.

Indeed, given the comprehensiveness of the rules, which govern both the mundane and the fundamental, the only thing surprising about them is the absence of any language permitting a sua sponte non-merits disposition without notice to the parties. If this were the supreme court's intention after Malooly , Inpetco , and Fredonia , one would have expected language to that effect to be included. Contra Tex. R. App. P. 38.9(b), 42.3 and 44.3.

Malooly and other supreme court decisions that reach like results do not address the question of what an intermediate court might do to permit a merits disposition and provide little guidance in the context presented here. See, e.g. RSL Funding, LLC v. Pippins , 499 S.W.3d 423 (Tex. 2016) (per curiam).

As the supreme court itself decided Fredonia after Malooly and promulgated rule 38.9(b) after both, there seems little cause for parsing it to avoid its plain meaning or seeking further permission to apply it.

The majority thus appears to treat Malooly as governing and to preclude decision or correction under the rules. While Malooly does not address the issue of its own application to the rules at issue here, it is notable that the same intermediate court that found the waiver giving rise to the requirement of compulsory correction in Inpetco later observed that Inpetco was itself a Malooly error, and confirmed the discretion to decide or permit a cure of the defect. See King v. Graham Holding Co. , 762 S.W.2d 296, 299 (Tex. App.-Houston [14th Dist.] 1988, no writ).

This designation requirement predictably led to breakdowns and a series of decisions mandating generous construction to facilitate merits resolution. E.g., Fambrough , 169 S.W.2d at 482 ("Our present briefing rules were adopted for the purpose of simplifying the briefing of cases so that greater attention will be devoted to the presentation of the merits of the appeal, and less attention given to the mechanics of the brief. ...Simply stated, the Court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder."); Aetna v. Chapel Hill I.S.D. , 860 S.W.2d 667, 669 (Tex. App.-Tyler 1993, no writ) ("Aetna prays this Court grant it all the relief sought in the trial court. The points of error do not follow the usual form seen in appeals in this state, but we will liberally construe them in light of the argument and prayer."). Even in this era, courts looked past the parties' description of the "issue" to include a review of the body of the argument regardless of how it was captioned or framed in a potentially deficient brief.

To be sure, both parties are directed to include a statement of the issues in their briefs, together with a variety of tables, statements, and summaries, and omission of an issue from the statement (or failure to include a statement altogether) has never been cited as a basis for dismissal or affirmance where the body of the brief adequately develops the argument. See Tex. R. App. P. 42.3, 38.9(a).

Of course, the line between an "issue" and an "argument" or even an "authority" will not always be as clear as it seems here. The task of drawing it is compelled on us by the rules we create and informed by common sense and experience. The distinction between an "issue" and an "argument" is not what divides us here, as rule 38.9(b) would permit a merits resolution in either case. That distinction might become important to a panel choosing whether to press forward and decide the case on the merits without supplemental briefing. As Justice Scalia observed, where missing material amounts to an argument, the court need not solicit further briefing to effect a merits resolution. E.g., Regan, 714 F.2d at 177. An issue identified sua sponte by the court is more problematic.

Affording the rule its plain meaning and applying it in this and like cases would also discourage incessant and creative arguments in this court over waiver from parties hoping to avoid review at all. It would also discourage gamesmanship below where parties would otherwise be motivated to parse and add "grounds" and "issues." No matter how ill-conceived such grounds might be, if they appear below and are not separately challenged on appeal, the majority would have us powerless to reject them.

Rule 38.7, governing amendments and supplements to briefs generally, permits revision on "reasonable terms" and directs revisions where "justice requires."

The majority correctly notes that we generally will not permit a party to raise a "new issue" for the first time in a reply brief or raise such a "new issue" ourselves without briefing from the parties. As noted above, there is a material difference between an "issue" and related or subsidiary arguments for purposes of that rule. Miller v. JSC Lake Highlands Operations , 536 S.W.3d 510, 513 n.5 (Tex. 2017) ; Dallas Metrocare Servs. v. Juarez , 420 S.W.3d 39 (Tex. 2013). If standing was the "issue" in this case, rather than an argument or ground in relation to subject matter jurisdiction, one would assume that the alternate jurisdictional "ground" would not be swept into this appeal under Malooly so as to create the potential for waiver in the first place. Stated conversely, it is hard to fathom how standing is so related to the ecclesiastical exception to create the potential for sua sponte recognition of briefing waiver, but not to leave open the potential for cure under these rules. In all events, rule 38.9(b) does not draw the distinction between issues and arguments that underlie the general prohibition on parties raising new issues late in a case's life. It poses only the question of whether the case is properly presented in the briefs.

Of course, where the brief flagrantly violates rule 38.1 by failing even to identify the issue, we are compelled to provide notice of the violation and correction under rule 38.9(a).

David M. Gunn, Unsupported Points of Error, 32 S. Tex. L. Rev. 105, 108-09 (1990-1991).

Of course, an appellee has the right to seek rehearing.